## THE PEOPLE OF THE STATE OF CALIFORNIA, Respondents, *v.* NESTOR REYES and C. VALENCIA, Appellants.

A juror being challenged for bias, was examined before triers. and asked the following questions : 1st. Are you not a member of a secret and mysterious order known as, and called, Know Nothings, which has imposed on you an oath or obligation. beside which, an oath, administered to you in a court of justice, if in conflict with that oath or obligation, would be by you disregarded? 2d. Are you a member of any secret association, political or otherwise, by your oaths or obligations to which, any prejudice exists in your mind against Catholic foreigners? 3d. Do you belong to any secret political society known as, and called by the people at large in the United States, Know Nothings? And if so, are you bound by an oath, or other obligation. not to give a prisoner of foreign birth, in a court of justice, a fair and impartial trial? *Held,* That the Court erred in ruling out these questions.

The juror was also asked the questions, Have you, at any time, taken an oath or other obligation of such a character, that it has caused a prejudice in your mind against foreigners? Are you under any obligation not to extend the same rights, privileges, protection, and support to men of foreign birth as to native · born American citizens? Have you any prejudice whatever against foreigners? *Held, per Bryan, J.,* That the Court erred in ruling out the questions.

The law contemplates that every juror who sits in a cause, shall have a mind free from all bias or prejudice of any kind, and if a juror is prejudiced in any manner, he is not a proper person to sit in the jury box.

Prejudice is a state of mind, which, in the eye of the law, has no degrees.

Where a juror is challenged for actual bias, the triers are to determine the fact from the testimony, and any testimony which would lead to the conclusion that a bias existed in the juror's mind, is competent testimony.

To ascertain whether a bias exists in the mind of a juror, resort must be had to his declarations to others, or to his sworn statements, when interrogated.

Prejudice being a state of mind more frequently founded in passion than in reason, may exist with or without cause; and to ask a person whether he is prejudiced or not against a party, and if the answer be affirmative, whether that prejudice is of such a character as would lead him to deny the party a fair trial, is not only the simplest method of ascertaining the state of his mind, but is probably the only sure method of fathoming his thoughts and feelings.

If the juror had taken such oaths as are referred to, he was grossly unfit to sit as a juror.

APPEAL from the Court of Sessions of Calaveras County.

The facts appear at length in the opinion of the Court.

*Allen P. Dudley,* and *Robinson & Beatty,* for Appellants.

Each of the questions propounded to the juror was competent and relevant, and should have been answered. Comp. L., pp. 465–468. Purple *v.* Horton, 13 Wend., 9. 1 Greenleaf on Ev., §§ 250, 251.

The object of the questions propounded was to ascertain whether the juror was indifferent and unbiased, and the answers to the same would necessarily have shown that the juror was or was not indifferent, and therefore they were pertinent and legal. *Ex parte,* Vermilyea, 6 Cow., 566. 7 Ib., 108. 1 Stark. on Ev., Part II, p. 143, § 26. 1 Gr Ev., §§ 456, 460.

*J. R. McConnell,* Attorney General, for the people.
No brief on file.

BRYAN, J., delivered the opinion of the Court. MURRAY, C. J., concurred.

The defendants, as appears of record, being citizens of Mexico, were indicted for an assault with intent to commit murder, and having plead not guilty, the Court proceeded to empanel a jury for the trial of the cause, during which R. Y. Avery was called as a juror, and was challenged by the counsel for the defense, upon the ground of actual bias against the defendants. Triers were appointed, and sworn to determine the question of bias in the juror, and upon the examination, Avery, the person called as a juror, was sworn, and the following questions were propounded to him by the counsel for the defense:—

1. Are you not a member of a secret and mysterious order known as, and called, Know Nothings, which has imposed on you an oath or obligation, beside which, an oath administered to you in a court of justice, if in conflict with that oath or obligation, would be by you disregarded?

2. Are you a member of any secret association, political or otherwise, by your oaths or obligations to which, any prejudice exists in your mind against Catholic foreigners?

3. Do you belong to any secret political society known as, and called, by the people at large in the United States, Know Nothings; and if so, are you bound by an oath, or other obligation, not to give a prisoner of foreign birth, in a court of justice, a fair and impartial trial?

4. Have you at any time taken an oath, or other obligation, of such

a character, that it has caused a prejudice in your mind against foreigners?

5. Are you under any obligation not to extend the same rights, privileges, protection and support to men of foreign birth, as to native-born American citizens?

6. Have you any prejudice whatever against foreigners?

The Court overruled all of the foregoing questions, and the cause now comes to us for a review of the action of the Court below.

Wherever the right of trial by jury exists, the law in all cases contemplates that each and every juror who sits in a cause, should have a mind entirely free from all bias or prejudice, of any kind whatsoever. In order to arrive at the condition of the person's mind, who is offered as a juror, a party is permitted to ask of the person himself, questions, the answers to which may tend to show whether he is prejudiced or not in the cause, which he is about to undertake to decide. If not satisfied with his answers, he can charge the person offered as a juror with actual bias, and if the charge be denied, its truth or falsity must be determined by triers. The triers are to determine the fact from the testimony, and any testimony which would lead to the conclusion that a bias existed in the juror's mind, is competent testimony. If the prejudice with which the juror is charged is to be determined one way or the other, by distinctions or inferences drawn by the Court from the questions put to the juror, there would be no necessity for triers, where actual bias is charged. Prejudice is a state of mind, which, in the eye of the law, has no degrees. If the juror is prejudiced in any manner, he is not a fit or proper person to sit in the box.

To ascertain whether a bias exists in the mind of the juror, resort must be had to his declarations to others, or to his sworn statements when interrogated. As the juror best knows the condition of his own mind, no satisfactory conclusion can be arrived at, without resort to himself. Applying this test then, how is it possible to ascertain whether he is prejudiced or not, unless questions similar to the foregoing are propounded to him? He is charged with belonging to a secret association, and with being, as a member of such association, under obligations which might create a prejudice against foreigners who may reside in the country. To ascertain that fact, and in order to purge

the juror of the charge of bias, he is asked the question, "Have you at any time taken an oath, or other obligation of such a character, that it has caused a prejudice in your mind against foreigners?" This certainly was not an impertinent question in a cause where foreigners were parties, whatever reasonable effect it might have upon the minds of the triers. The person might have answered, that he held a political prejudice against foreigners, but that he entertained no bias which would lead him to deny to foreigners a fair trial, and a just and impartial administration of the law.

Prejudice being a state of mind more frequently founded in passion than in reason, may exist with or without cause; and to ask a person whether he is prejudiced or not against a party, and, (if the answer is affirmative,) whether that prejudice is of such a character as would lead him to deny the party a fair trial, is not only the simplest method of ascertaining the state of his mind, but is, probably, the only sure method of fathoming his thoughts and feelings. If the person called had not taken an obligation which would prejudice him against foreigners in such a manner as to imperil their rights in a court of law, he could say so, and the question and answer would be harmless. If, upon the other hand, he had taken oaths, and was under obligations which influenced his mind and feelings in such a manner as to deny to a foreigner an impartial trial, he is grossly unfit to sit as a juror, and such facts should be known.

The case cited in the able argument of the Attorney General, in Purple v. Horton, 13 Wendell, p. 10, is not in point. In that case, the triers, after hearing the testimony of Royal Arch Masons, as to the obligations they were under, held that a Royal Arch Mason was a competent juror to sit in a cause where a Mason was a party against a person who did not belong to the Masonic fraternity.

In this cause, the questions put to the juror in the presence of the triers, are overruled by the Court, and the triers have not the benefit of the answers of the juror.

I hold, that the Court erred in refusing to allow the questions to be asked, and by thus refusing, destroyed the surest method of determining whether the person called as a juror was that impartial and unbiased person which the law contemplates should sit upon a jury.

The judgment of the Court below must be reversed, and the cause remanded for further proceedings.

MURRAY, C. J.—I am of opinion that some of the questions were pertinent, and should have been asked; because, if the juror had answered in the affirmative, he would have shown that he was incompetent. Other questions were improper.

On the whole, the judgment should be reversed.