[Crim. No. 288.    Second Appellate District.—September 15, 1913.]

THE PEOPLE, Respondent, v. CARL WARR, Appellant.

CRIMINAL LAW—PROSECUTION FOR TRYING TO USE DYNAMITE—EXAMINATION OF JURORS.—In a prosecution for placing and attempting to explode dynamite with intent to injure and terrify certain persons, it is not improper for the district attorney in examining jurors to ask whether they believe in the doctrine of a certain political party known as "direct action," which signifies that physical force is approved as a means to secure desired ends; it not being shown that the defendant belongs to the political party referred to.

ID.—EVIDENCE—REPORTER'S NOTES AT PRELIMINARY EXAMINATION.—It is irregular practice in such prosecution to allow the stenographer, who produces a transcript of his shorthand notes taken at the preliminary examination of the defendant, to read directly from them to the jury; but if the only objection to such evidence is that it does not appear that the witness needs to thus refresh his memory, the admission in this manner of the order holding the defendant to answer, and the reply of the. defendant to a question propounded by the magistrate at the conclusion of the order that he was going to plead guilty in the superior court, is not reversible error.

ID.—REPORTER AS WITNESS—REFRESHING MEMORY BY REFERRING TO NOTES.—In such case if the stenographer, when asked if a certain section of the Penal Code was read to the defendant at the preliminary examination, replies that he cannot tell without consulting his notes, the record being of considerable length, it is peculiarly within the province of the trial court to decide whether he may thus refresh his memory.

ID.—EVIDENCE—SPECIFIC OBJECTIONS—WAIVER OF OTHERS.—Where particular and specific grounds of objection to evidence are stated, other grounds, however available or pertinent, will be held to be waived.

ID.—ARGUMENT OF DISTRICT ATTORNEY—WHETHER AMOUNTS TO MISCONDUCT.—The district attorney, in a prosecution for placing and attempting to explode dynamite with intent to injure and terrify certain persons, goes outside the established path marked out for prosecuting officers when he says: "But, gentlemen, can you turn this man loose on the streets of this town, and go home, and sleep quietly in your beds? You may think, 'Well, he won't come to my place,' and he may not; but I hope to goodness if you do, I hope you will have the experience with him that we had."

ID.—MISCONDUCT OF DISTRICT ATTORNEY—FAILURE TO REQUEST INSTRUCTION CONCERNING.—But if the defendant fails to request the court to instruct the jury to disregard the language of the prosecutor, an appellate court will not reverse the case for such misconduct.

ID.—CONVICTION FOR LESSER OFFENSE—INSTRUCTIONS.—The defendant has no occasion for complaint because the court refuses to tell the jury that while he may not be guilty of the charge laid, he yet may be guilty of a lesser offense, when the jury are told that if he is not found to be guilty of the precise offense charged, he is entitled to an acquittal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Thos. P. White, Alfred L. Bartlett, Irwin, White & Rose-crans, and Randall & Bartlett, for Appellant. ·

U. S. Webb, Attorney-General, and Geo. Beebe, Deputy Attorney-General, for Respondent.

JAMES, J.—Appellant was convicted upon an information charging that he did. "willfully, unlawfully, feloniously and maliciously place, deposit and attempt to explode at, in and near a certain building, to wit: the Central Police station in the city of Los Angeles, a certain nitroglycerine explosive, commonly known as giant-gelatine or dynamite, with intent then and there to injure, intimidate and terrify Richard H. Hilf and other human beings." He appeals from the judgment by which he was sentenced to serve twenty years in the state prison, and from an order denying a motion made on his behalf for a new trial.

On the morning of November 19, 1912, defendant, who was disguised by wearing a yellow mask over his face, and green goggles, entered the outer offices of the chief of police of Los Angeles, bearing a large parcel or box. He approached an officer and demanded to see the chief of police. Upon being told that he must state his business before he could be permitted to see that official, he said that he had enough dynamite in the package which he carried to blow up the police station and ordered the officer to produce before him immediately the highest official of a railroad company, whom he could find in the city of Los Angeles. He insisted upon his demand being complied with and showed to the officers, others having gathered in the mean time, that he had his box of dynamite all arranged ready to explode. A glass panel had been placed in the top of the box and a musket hammer could be seen through it, the hammer being held back in a position to be dropped, with caps and fuses attached. It was at first thought that the claim that there was dynamite in the box was false, and that defendant was perpetrating some sort of a hoax. However, two men familiar with dynamite were. permitted by defendant to examine some of the sticks, of which the box contained about sixty, and they found that it really was dynamite and of very high explosive quality. Defendant all of this while held one hand inside the box, and told

the onlookers that the moment he withdrew it the hammer would descend and set off the cap which in turn would fire the fuses and dynamite. The problem as to what was to be done with the visitor had become a serious one. The prisoners in the jail and the occupants of rooms upstairs were ordered out of the building. A pretense had been made to telephone to the railroad official whose presence the defendant demanded, and defendant was told that the man would come in twenty minutes. He stated that they must produce the highest official who happened to be in the city; that "they must go down the line" until they found one. A member of the city detective force and an officer attached to the district attorney's office, decided to put an end to the suspense. One approached defendant as he sat in a chair and struck him on the head with a policeman's billy, knocking him to the floor where he lay unconscious. The other watched the box. As defendant fell, the hammer of the infernal machine descended and lighted the fuse. Grabbing up the sputtering box the officer ran with it to the street where he tore it into pieces and disconnected the fuses. No explosion occurred. Defendant upon recovering consciousness expressed surprise that the dynamite had not exploded—also regret. He said that he had intended to scare the police officers and "scare them good and plenty." He told how he had obtained the dynamite in San Bernardino County by substituting a lock of his own for one just like it which he found on the magazine door of a rock quarrying company, and taking the dynamite out at pleasure. He talked freely and voluntarily about the whole episode, both before and at the preliminary examination, and at the trial no facts were left in dispute at all. This latter condition of the evidence is referred to hereinafter in connection with a consideration of the points contended for as grounds entitling defendant to another trial.

The district attorney, in his examination of the persons summoned to serve as jurors inquired of them whether they believed in the doctrine, of members of a certain political party, known as "direct action," which signified that physical force was approved as a means to secure desired ends. These questions were objected to and misconduct of the prosecutor is assigned because of the asking of the questions. Conceding that the matter of the alleged misconduct was properly presented

to the trial judge and in such a way as to entitle the question to be here reviewed, which may be doubted for the reasons appearing later in this opinion where similar objections are dealt with, yet it must be said that the interrogatories were within the scope of a reasonable examination of the veniremen. It was not shown that defendant belonged to the particular political party referred to, and the questions should be considered as only requiring the veniremen to say whether they believed a person justified in using physical force in redressing his own injuries, real, or fancied. The questions were proper in order that the matter of actual bias if any existed in the minds of the prospective jurors should be brought out.

It was irregular practice to allow the stenographer who produced a transcript of his shorthand notes taken at the preliminary examination of the defendant, to read directly from that transcript to the jury. But the only objection urged to that evidence was that it did not appear that the witness needed to thus refresh his recollection. The trial court determined that it was apparent that the reporter could not recollect the exact terms of the evidence given without referring to the transcript. The district attorney offered to use the shorthand notes, instead of the transcription thereof, but defendant's counsel stated in effect that the objection made would be the same to the notes as to the transcript; in other words, they conceded that the transcript furnished as competent evidence as the notes themselves. Where particular and specific grounds of objection are stated, other grounds, however available or pertinent, will be held to be waived. The trial court here determined that the witness needed to use the transcript to refresh his recollection, and that matter was one peculiarly within the province of the trial judge to decide. At the outset the reporter, when asked to tell whether a certain section of the Penal Code had been read to defendant at the preliminary examination, replied that he could not tell without examining his notes. This answer of the witness, taken in connection with the fact that the record of the proceedings had at the preliminary examination was of some considerable length, which condition was made apparent to the trial judge from an inspection of the transcript exhibited to him, and which sufficiently appears here from the quantity of matter which was read into the record from the reporter's transcript, certainly

afforded some ground for allowing the witness to refresh his recollection by the use of his notes or some transcription thereof made by him and which he verified as being correct. The testimony given by the stenographer was as to what was stated by the defendant who testified as a witness at the preliminary examination. It is not contended that defendant was not fully instructed by the magistrate as to his right not to testify, and as to the testimony so given being used against him in that event, and it sufficiently appears that the section of the Penal Code bearing upon that subject was read to him. He was then asked by the prosecuting attorney: "After having heard this section read do you still want to tell your story?" to which the defendant replied: "I will tell all and all." The reporter read from the transcript the statement of the defendant which was by way of question and answer; when he had partially concluded reading, one of the attorneys for defendant arose and stated that he understood that the reporter was wanted in another court and said, addressing the court: "We are willing to stipulate that Mr. Hammon (the deputy district attorney) shall read the questions and answers to the jury in order that Mr. Wright can get away to attend to his business, if that is satisfactory to the court and the district attorney. If your honor is going to admit the testimony any way, it matters not who reads it." Thereupon the deputy district attorney mentioned proceeded to read the remainder of the testimony of the defendant, as set out in the reporter's transcript, including the order of the magistrate holding the defendant to answer. This latter was read no doubt for the reason that at the conclusion of his order the magistrate propounded the following rather unusual question to the defendant: "Are you going to plead guilty to this in the superior court?" and the defendant answered: "Yes, sir, so far as this, yes, sir." Counsel for appellant now strenuously insist that it was palpable and inexcusable error for the district attorney to introduce the order of the magistrate and the question and answer last set out. But there is neither objection nor exception upon which to found an argument as to this matter. At the time of the reading of it before the jury, some intimation should have been given to the trial judge that the defendant objected to its introduction, or at least a motion should have been made after the reading of it to strike out the objectionable statements.

It has already been pointed out that the objection previously made to the reading of the transcript was limited to the one question as to whether it had been shown that the reporter needed the transcript with which to refresh his recollection. This condition of the record furnishes, on the point, a complete answer to the argument that error exists demanding a reversal. A further answer might be made: conceding error, and that the objection was properly raised in time, under the whole evidence, which was practically without dispute and uncontradicted as to any part or particular, no such prejudice could have been worked to defendant's rights as would amount to a miscarriage of justice.

And the conclusion just expressed must be said to change the hue of the entire list of alleged errors set forth in the argument of counsel for appellant.   The defendant introduced no testimony which contradicted in any degree the narrative of his performance as told by the witnesses for the people. . The jury might have left out of view altogether the statement of defendant as it was shown to have been made at the preliminary examination.   The facts were clear and unclouded as to those essentials necessary to make out the offense with which he was charged.   The deputy district attorney in his argument to the jury, and in the heat of his exhortation, went outside the established path marked out for prosecuting officers when he said: ''But, gentlemen, can you turn this man loose on the streets of this town and go home and sleep quietly in your beds? You may think, 'well, he won't come to my place,' and he may not; but I hope to goodness if you do, I hope you will have the experience with him that we had.''   But here again the defendant failed to make any request to the court that the jury be instructed to disregard the language of the prosecutor, and so failed to lay any foundation for a review of the objection, as was the case in *People* v. *Shears,* 133 Cal. 159, [65 Pac. 295].   And conceding that there are cases where the misconduct may be of such a nature as to render an instruction from the court to the jury directing that no attention be paid to it, futile and unavailing, and therefore unnecessary to be asked for, the situation presented here does not illustrate such an instance.   There may well be times when the judge, by a clear intimation as to his opinion as to facts of a case, improperly made to a jury, could not, by following the misconduct with

a direction to the jury to disregard it, effectually clear the minds of the jurors of a prejudicial impression; but it very seldom happens that a mere observation of an attorney, expressed during the heat of his oration, fastens itself with such tenacity upon the minds of the jurymen as not to be dislodged by a direct instruction from the trial judge.

Appellant offered an instruction and requested that it be given to the jury, which advised that a conviction might be had of a lesser offense than that charged. The position of the prosecution was that the defendant was guilty of the particular crime charged or no offense at all. If the instructions were full and fair on that issue, as they were, it is all that defendant could ask or require. There could be no complaint made on his part because the court refused to tell the jury that while the defendant might not be guilty of the charge laid, he yet might be guilty of a lesser offense, when the jury were told that if he was not found to be guilty of the precise offense charged he was entitled to an acquittal. (*People* v. *Huntington,* 138 Cal. 261, [70 Pac. 284].) The instructions as to the burden and quality of proof required to establish insanity were full and complete, and no error appears from the action of the court in refusing any of the several charges asked for by defendant. The trial judge construed the term "place," used in the information, to mean the same as "deposit," and as applied to the charge under consideration it does not seem that any different definition was required or could have been used to more correctly express the meaning of that term.

Appellant has shown no sufficient cause warranting a reversal of the judgment or order denying a new trial.

The judgment and order appealed from are affirmed.

Allen, P. J., and Shaw, J., concurred.