[Crim. No. 918.  Second Appellate District, Division One.—April 17, 1923.]

THE PEOPLE, Respondent, v. JOHN H. VITELLE, Appellant.

[1] CRIMINAL LAW — ASSAULT TO COMMIT BODILY INJURY — JURY — PREJUDICE AGAINST KU KLUX KLAN—DISQUALIFICATION OF JUROR. Where, in a prosecution for assault by means of force likely to produce great bodily injury, it was well understood at the time of the examination of the jurors that the evidence would show that the defendant was a member of an organization known as the Ku Klux Klan, the denial of a challenge to a juror for actual bias as defined in section 1073 of the Penal Code after the defendant had exhausted his peremptory challenges was prejudicial error, where such juror assured the court that while he was willing to accept the court's instructions and to attempt to decide the case in accordance with the law, that immediately upon the production of evidence that the defendant was a member of the Klan, that would create in his mind a bias and prejudice against the defendant which would prevent him from acting fairly and impartially and that such prejudice would weigh with him to such an extent that he would be influenced in hearing the testimony.

[2] JURIES AND JURORS — PREJUDICE AGAINST ORGANIZATION — EFFECT OF.—A juror cannot be said to be fair or impartial toward a defendant, and he cannot be qualified to weigh the evidence touching the guilt or innocence of a defendant upon a criminal charge, when such juror admits that in weighing the evidence he will be prejudiced against the defendant solely by reason of the fact that the defendant is a member of an organization to which the juror feels that he is opposed, and it matters not whether that prejudice against the organization is or is not well founded.

1. Bias of jurors as ground for new trial, notes, 12 Ann. Cas. 922; Ann. Cas. 1913A, 892; 18 L. R. A. 476.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. J. W. Mahon, Judge. Reversed.

The facts are stated in the opinion of the court.

Emmons & Aldrich for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CONREY, P. J.—Defendant was convicted on the third count of the indictment. The offense charged was that of a felonious assault upon the person of one Mason, by means of force likely to produce, and which did produce, great bodily injury. The defendant appeals from the judgment and from an order denying his motion for a new trial. The sole ground of appeal is that the court erred in overruling defendant's challenges for cause to four jurors of the panel.

It seems to be conceded by counsel on both sides that at the time of the examination of these jurors it was well understood that the evidence would show that the defendant was a member of an organization known as the Ku Klux Klan, and that his alleged actions and conduct toward the complaining witness upon the occasion mentioned in the indictment were, according to the prosecution, a part of his activities as a member of that organization. Defendant's challenge to each of the four jurors was based upon the claim that the examination of the jurors showed that they were prejudiced against the defendant because he was a member of the Klan, and that they were disqualified on account of actual bias as defined in section 1073 of the Penal Code. It is there provided that a particular cause of challenge exists "for the existence of a state of mind on the part of the juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party, . . . " The right of challenge for actual bias is limited by section 1076 of the Penal Code as follows: "but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon

public rumor, statements in public journals, or common notoriety; provided it appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters to be submitted to him.''

The four jurors to whom these challenges were made were Kanawyer, Ammon, Lauder, and McAdam. Kanawyer, Ammon, and Lauder were excused on peremptory challenge of the defendant after his challenges of those jurors for cause had been denied. After the defendant had used ten peremptory challenges (being the total number allowed to him by law) the defendant asked permission to use another peremptory challenge, which request was denied. At this time Mr. McAdam was in the jury-box and had been examined as to his qualifications, and had been challenged for cause and the challenge denied. It resulted that McAdam was sworn as a juror and acted as a juror at the trial.

On the record thus made, if McAdam was not qualified to act as a juror in the case, the denial of the challenge for cause constituted prejudicial error, for which necessarily the judgment must be reversed. (*People* v. *Riggins,* 159 Cal. 113, 120 [112 Pac. 862]; *People* v. *Helm,* 152 Cal. 532 [93 Pac. 99].) In that event it will not be necessary to consider the objections to the qualifications of the other jurors above mentioned.

Mr. McAdam testified that he knew the defendant; that he had read about the case; that he had heard it talked of since the indictment was found. ''Q. Did you ever hear anyone expressing any opinion as to the guilt or innocence of Mr. Vitelle? A. I don't know. Q. Do you remember making any expression of opinion yourself? A. I haven't in regard to this case. Q. Are you conscious now, at the present time, of having any opinion one way or the other? A. Not in regard to this case, no. Q. Why do you qualify that? A. I am not in favor of the Klan. Q. That is what you have reference to? A. Yes. Q. You know now that Mr. Vitelle has been indicted as a member of the Klan, does that create in your mind a bias and prejudice against him? A. I don't think it would. Q. If it should transpire in this case that he was a leading member of the Klan, would that create in your mind any bias and prejudice against him? A. It would. Q. Do you think that with that bias

and prejudice, you could act absolutely fairly and impartially toward him? A. I don't think I could. Q. You think if you were selected as a juror in this case, that the bias and prejudice you might have against him by reason of his connection with the Klan, would influence you in hearing testimony here? A. I could hear the testimony here, but his membership . . . Q. (Interrupting.) Knowing your own mind as you do, if you were sitting as Mr. Vitelle is, would you be willing to be tried by twelve men who felt toward you and your case as you feel toward him and his case? A. I would not. Q. You think you are liable to be unfair in the matter? A. Well, I would weigh the testimony. Q. Well, why wouldn't you want to be tried by twelve men feeling as you do? A. Well, my membership would be against me, I think. Q. That is, you think the fact he is a member of it, would weigh with you to such an extent that you would be influenced in hearing the testimony? A. Yes. Q. Have you ever sat on a jury before? A. I have not. Q. If the court should instruct you in this case that it is the duty of the prosecution to prove every material fact necessary to constitute the offense charged against the defendant, beyond a reasonable doubt and to a moral certainty, would you be prejudiced against an instruction of that kind? A. I would not. Q. If given, you would follow it? A. Yes. Q. If the court should further instruct you that the law presumed the defendant to be innocent as he sits here now, and that that presumption of innocence goes with him all through the trial, up to and including the time of finding the verdict, and that you, as a juror, are not at liberty to disregard that presumption of innocence, but must weigh it with all the testimony in the case, and reconcile the evidence, if possible, with this presumption of innocence, would you follow that instruction? A. I would. Q. Would you have any prejudice against it? A. I would not. Q. If the court gives you that, and also gives you an instruction in regard to what reasonable doubt is, and you had in your mind a reasonable doubt as to the guilt of the defendant and were about to vote not guilty, would you stop and consider what your neighbors might think about your verdict and allow that to influence you? A. I would not. Q. If Mr. Vitelle should go on the stand and testify in his own behalf, would you be inclined to reject his

testimony simply because he was the defendant? A. I would not. Q. If, from his testimony alone, there arose in your mind a reasonable doubt as to his guilt, would you give him the benefit of that doubt by an acquittal? A. I would. Q. Do you know of any reason, outside of this bias and prejudice you spoke of, that might influence or bias you in this case? A. Not except it would take evidence to remove my bias against the Klan. Q. Outside of that, is there anything else? A. No. Q. Then you are pretty well satisfied in your own mind that the fact that he is a member of the Klan would, of itself, bias you against him? A. It would. Q. And that is the attitude of mind you have when you go on the jury? A. Yes, sir. Mr. Emmons: Challenge the juror under Subd. 2, section 1073, for existence of a state of mind with reference to the case and the defendant, which would prevent him from acting with entire impartiality. Mr. Dorsey: We will deny the challenge for a moment. Mr. McAdam, do you have any opinion now as to whether or not the defendant does belong to the organization? A. Except what I have seen published. Q. Then your opinion on that is merely from what you have seen in the newspapers? A. That is in regard to membership. Q. Well, at this time have you any prejudice against him by reason of the fact that his name was published in the paper as a member? A. Well, I would have to have it proved that he was connected with it. Q. Well, if it was proved that he was a member, you would then have a prejudice against him? A. Yes, sir. Q. Is that prejudice to the extent that you would be willing to find him guilty of this charge? A. Not unless it was proven upon the charge. Q. Unless it was proved he was guilty of this charge. Well, in determining whether or not he was guilty of this charge, would you allow any prejudice to creep in against him in determining on the evidence produced here? A. Well, I couldn't, unless it was proven he was a member. Q. You would have some opinion about his being a member of the organization? A. Yes. Q. Would you convict him of this charge merely because he was a member? A. No, only on the evidence. Q. If the evidence came in and showed he took part in any activities as a member, you would have a prejudice against him? A. Yes. Q. Until that time, would you have? A. I

couldn't have. Q. You couldn't have until that appeared in the evidence? A. No. Q. As you are sitting now, you haven't any prejudice against this defendant here from anything at all, have you? A. Not personally; I have against the Klan. Q. You don't know he is a member of any organization yet, do you? A. No. Q. You would have to wait and find out what the evidence was, wouldn't you? A. Yes." Thereupon the challenge was submitted and was denied.

From the foregoing examination of the juror, it appears that he was willing to accept the court's instructions and to attempt to decide the case in accordance with the law as he should be instructed by the court, which instructions presumably would require the prosecution to prove beyond a reasonable doubt the facts necessary to constitute the offense charged against the defendant, and to give the defendant the legal presumption of innocence to which a defendant is entitled at all times prior to the complete establishment of his guilt. But McAdam assured the court that immediately upon the production of evidence that the defendant was a member of the Klan, that would create in his mind a bias and prejudice against the defendant which would prevent him from acting fairly and impartially toward the defendant; that this prejudice would weigh with him to such an extent that he would be influenced in hearing the testimony; that it would take evidence to remove his bias against the Klan. True, he said that this prejudice would not be such that he would be willing to find the defendant guilty of this charge unless the fact of his guilt was proven; but in determining whether the evidence amounted to proof, his prejudice against the Klan would influence him in passing upon the sufficiency of the evidence.

[1] We find no escape from the conclusion that there existed in the mind of McAdam a state of mind in reference to the case which necessarily prevented him from acting with entire impartiality and without prejudice to the substantial rights of the defendant.

To disqualify the juror, it was not necessary in this instance that he should have stated that he had an opinion as to the guilt or innocence of the defendant. The challenge was not based upon the fact of such an opinion, but upon the existence of the state of mind to which we have

referred. This disqualification exists in both civil and criminal cases, but, if there could be any difference, it would be more important in criminal cases. Yet, even in a civil action by a landlord against his tenant, where the juror, upon being informed what kind of an action was pending, declared himself hostile to all landlords, it was held that on account of this state of mind, the juror was incompetent and that the court exercised a sound discretion in allowing the challenge. (*Lawlor* v. *Linforth,* 72 Cal. 205 [13 Pac. 496].)

Actual bias, as described in the code, "may consist of an opinion as to the guilt or innocence of the accused, based upon some knowledge or information of the facts embraced in the charge or of the evidence to be produced, or it may exist without such knowledge or information, and may consist of a preconceived opinion concerning the defendant or the prosecuting witness which would prevent a fair consideration by the juror of the evidence given or facts proven in the case." (*People* v. *Riggins,* 159 Cal. 113, 117 [112 Pac. 862, 864].)

In the case at bar the prosecuting witness, in testifying to the assault, directly identified the defendant as one of the men who forced him to go with them to the place where they flogged him with ropes; and there was other testimony tending to prove further participation of the defendant in that assault. The evidence for the prosecution fixed the time of the assault at between 8 and 9 o'clock of the evening of October 27, 1921. On the other hand, according to the testimony of the defendant and several other witnesses, the defendant at that time was playing cards at the home of a friend at a considerable distance away from the baseball park where the assault occurred.

For the purposes of the question at issue on this appeal, we are not concerned with the sufficiency of the evidence to have justified a jury in finding the defendant guilty. Let it be assumed that it is sufficient. But when it is said that it is for a jury to weigh and determine the effect of the evidence upon a disputed question of fact, the law intends that the accused shall have the right to have that issue determined by a fair and impartial jury. [2] A juror cannot be said to be fair or impartial toward a defendant, and he cannot be qualified to weigh the evidence touching the

guilt or innocence of a defendant upon a criminal charge, when such juror admits that in weighing the evidence he will be prejudiced against the defendant solely by reason of the fact that the defendant is a member of an organization to which the juror feels that he is opposed. And it matters not whether that prejudice (pre-judgment) against the organization is, or is not, well founded. To compel a person to submit his liberty to jeopardy depending on the decision of a tribunal thus prejudiced would be to deny the protection of a fundamental right.

The judgment and order are reversed.

Houser, J., and Curtis, J., concurred.