[Crim. No. 1262.   First Appellate District, Division One.—November 18, 1926.]

## THE PEOPLE, Respondent, v. W. K. EPHRAIM, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT BY AGENT—OWNERSHIP OF NOTE —GOOD FAITH — CONFLICTING EVIDENCE — VERDICT — APPEAL. — In this prosecution for the embezzlement of a promissory note which was given as part payment of the purchase price of an apartment house business, the contentions of defendant that the evidence failed to establish any agency between himself and the prosecuting witness relating to the sale of her interest in the apartment house, but, on the contrary, showed that he was acting as principal, and as such acquired said note in a transaction had with

the purchasers of said business separate and distinct from his business relations with the prosecuting witness, and that the evidence showed that he appropriated the note "openly and avowedly, and under claim of title preferred in good faith," and, therefore, under the provisions of section 511 of the Penal Code he could not be held to be guilty of embezzlement even though his claim of title was untenable, having been founded upon conflicting testimony, the verdict of the jury finding defendant guilty was controlling on appeal.

[2] ID.—AGENCY—CONVERSION—GOOD FAITH—EVIDENCE—VERDICT.—In such prosecution, the verdict of guilty was sufficiently sustained where the receipt of the promissory note by defendant and the conversion thereof to his own use were admitted facts, and evidence adduced on behalf of the prosecution, and which was accepted by the jury, established an agency between defendant and the prosecuting witness for the disposal of her property for a commission, the consummation of the agency, that the promissory note was received by defendant in the course of his employment as the agent of the prosecuting witness, as part of the purchase price which legally belonged to her, and that said note was treated as her property at the time of its execution and delivery to defendant, the understanding being that it was to be used for her use and benefit, and other evidence adduced on behalf of the prosecution was legally sufficient to negative defendant's claim of good faith.

[3] ID.—WEIGHT AND CREDIBILITY OF TESTIMONY—VERDICT—APPEAL.— Where many of the facts essential to a conviction of defendant were established by the testimony of the prosecuting witness, which was accepted and believed by the jury, and the record on appeal does not demonstrate that the material portions thereof are inherently false or even improbable, the verdict will not be reversed because such testimony was not given with the same degree of clearness and exactness which characterized the giving of the testimony of other witnesses in the case.

[4] ID. — MISCONDUCT OF DISTRICT ATTORNEY — UNIMPORTANT TRANSGRESSIONS—WAIVER OF OBJECTION—APPEAL.—A judgment of conviction will not be reversed on appeal by reason of alleged misconduct of the district attorney, where the alleged transgressions are not of sufficient importance to demand a reversal of the case, and the record discloses that defendant made no assignment of error, nor did he request the court to instruct the jury to disregard the language or conduct in question.

---

(1) 17 C. J., p. 264, n. 89. (2) 20 C. J., p. 414, n. 32, p. 424, n. 4, p. 486, n. 60, p. 487, n. 65. (3) 9 C. J., p. 669, n. 48. (4) 17 C. J., p. 62, n. 94.

3. See 8 Cal. Jur. 590.
4. See 8 Cal. Jur. 258, 621; 2 R. C. L. 435, 438.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. Fred V. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thos. T. Califro, John D. Harloe, Julian H. Biddle and R. C. Young for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The defendant herein was found guilty of embezzlement and has appealed from the judgment of conviction and the order denying his motion for a new trial, urging as grounds for reversal insufficiency of the evidence and misconduct of the district attorney.

The property alleged to have been embezzled was a promissory note for the payment of the sum of $500, signed by Morris Chernow and wife, and delivered to appellant in part payment of the purchase price for the sale to Chernow and one Belan of an apartment house business in Oakland, owned and operated by Mrs. Nellie Keach, the information charging that said note came into appellant's possession as agent and bailee of Mrs. Keach and was by him fraudulently and feloniously appropriated to his own use. The fact that appellant received the note from Chernow is not controverted, nor is there any claim made that the same was not afterwards converted by appellant to his own use, but the ownership of said note is disputed. [1] With respect thereto appellant contends that the evidence fails to establish any agency between himself and Mrs. Keach relating to the sale of her interests in said apartment house, but, on the contrary, shows that he was acting as principal, and as such acquired said note in a transaction had with Chernow separate and distinct from his business relations with Mrs. Keach; and, moreover, that it shows that he appropriated the note "openly and avowedly, and under the claim of title preferred in good faith"; and that therefore under the provisions of section 511 of the Penal Code he cannot be held to be guilty of embezzlement even though his claim of title be untenable.

After reviewing the evidence we are satisfied that the propositions thus advanced by appellant as absolving him from the commission of any criminal act are founded upon conflicting testimony, and that being so, the verdict of the jury must be held as controlling. The evidence supporting the conviction as it is revealed by the record may be stated as follows: In June, 1924, Mrs. Keach was lessee of the Coronado apartments in Oakland and owner of the furniture and equipment therein, subject to a chattel mortgage. Desiring to sell her interests, she listed the same with real estate brokers, among them being one Spencer. Appellant was not a licensed real estate broker, but claimed to have been engaged in the business of buying and selling property on his own account. He inspected the Coronado apartments at Spencer's invitation, but after such inspection informed Mrs. Keach that he "could not do anything" with the property. A few days later, however, he found two prospective purchasers, Chernow and Belan, who examined the apartments in company with appellant and Spencer, but were unable to agree with Mrs. Keach upon terms of sale. They were about to leave, but after holding a brief conference among themselves outside of the house, appellant, accompanied by Spencer, returned into the house and at appellant's solicitation Mrs. Keach finally agreed to accept $2,500 in cash for her interests, and out of that sum to extinguish the chattel mortgage amounting to $500 and to pay appellant a commission of $300, leaving a net sale price to her of $1,700. Later on the same day, at appellant's office, Chernow and Belan expressed themselves as being satisfied with the amount of purchase price, but stated that Mrs. Keach's lease which was about to expire contained an option calling for an extension of only two years, and that they wanted a lease covering a term of four or five years. Appellant replied that he believed such a lease could be obtained. Chernow also stated that he would be unable to pay the full amount of the purchase price in cash, being short $500, but that he was the owner of a promissory note for $1,875, payable in monthly installments of $25 each, secured by a trust deed to Oakland property, which he was willing to pledge as security for a loan of $500. Appellant said that personally he was unable to lend the money, but assured Chernow that the matter could be handled through

the bank. Thereupon Chernow and Belan entered into
a written agreement with appellant to take a five-year lease
and to purchase Mrs. Keach's interests, and paid appellant
a deposit of $400 in addition to the sum of $100 already
paid to him. Appellant notified Mrs. Keach of the pur-
chasers' acceptance, and thereafter obtained a satisfactory
lease from the owners of the property, naming Chernow
and Belan as lessees, for which service the lessors paid ap-
pellant $250. A bill of sale was then prepared by appel-
lant and executed by Mrs. Keach, transferring her interests
to Chernow and Belan, and was placed in appellant's hands
for delivery to the vendees upon the payment of the bal-
ance of the purchase price. On June 26, 1924, the sale
was consummated by appellant in the absence of Mrs.
Keach, by accepting the note in question and the balance
of the purchase price in cash, and from the cash received
he deducted his commission of $300, the purchasers taking
possession of the property on July 1st.

As to the circumstances surrounding the execution of the
promissory note for $500 and its subsequent conversion by
appellant, the evidence discloses that in order to prevent a
collapse of the sale and notwithstanding that Mrs. Keach
had authorized only a cash sale, appellant accepted said
note for $500 as part of the purchase price  The form of
the note was prepared by appellant, naming himself as
payee thereof, but before it was signed, Chernow's attorney
asked appellant, in Chernow's presence, as to his reason
for naming himself as payee. Appellant replied that since
Mrs. Keach demanded all cash he had made arrangements
with the bank to loan $500 on the Chernow note, and that
he would pay the money received from the bank to Mrs.
Keach. At the same time he agreed with Chernow and
his attorney, upon the latter's demand, to deposit said note
in escrow with the bank along with the security, consisting
of the promissory note for $1,875 and the trust deed se-
curing the same; also the assignment to appellant of said
trust deed, and a reassignment of the same to Chernow.
As a matter of fact, appellant had not made any arrange-
ments with the bank, nor did he afterwards attempt to do
so; and the next morning, instead of completing the escrow
as he had agreed, he deposited with the bank only a copy
of the note for $500, along with the secured note for $1,875,.

and an assignment of the trust deed, and about a month later endeavored to dispose of the Chernow security to an investment broker, but, being unsuccessful, sold the original Chernow note for $500 to said broker, receiving therefor the sum of $232, no part of which he paid to Mrs. Keach.

With reference to appellant's business relations with Mrs. Keach subsequent to the date of the sale on June. 26, 1924, the evidence shows that as soon as the transaction with the purchasers was consummated, appellant notified her of that fact. He stated further that owing to the inability of the purchasers to pay the entire amount of the purchase price in cash, he had accepted Chernow's note for $500 as part payment thereof, but that he would obtain a loan of $500 from the bank on said note and pay the amount received to her; that thereby she would be paid the full amount of the purchase price in cash as demanded. Within a few days after the purchasers had taken possession of the property, Mrs. Keach called to collect the money due her and was informed by appellant that he was unable to borrow the money from the bank on the Chernow note, but that he would deliver the note itself to her, after retaining it five or six days so as to allow creditors to present claims. Mrs. Keach agreed to accept the note, believing, as she testified, that it would be paid to her as represented, at the rate of $25 a month with interest. Thereupon appellant paid her $1,200 in cash, which was the net balance of the purchase price due her after deducting $500 for the release of the chattel mortgage and $300 for appellant's commission. Several days elapsed before Mrs. Keach again called as instructed to obtain the note, and appellant then told her, according to her testimony, that it was necessary to have the note recorded. At that time, however, he paid her $20.50, which he represented was the first $25 installment due on the Chernow note, after deducting $4.50 for recording fees.

During the interim, the exact time not being made clear; appellant, as a result of the repeated demands Mrs. Keach was making upon him for the delivery of said note, gave her a document which she claims he represented as being, and which she believed to be, the Chernow note, but that she afterwards discovered that she had been deceived, and that the document was in fact an assigned deed of trust

given to appellant by one Harris, on June 24, 1924, to secure the payment to appellant of the sum of $500, the trust deed covering property in Tehama County of the value of $160; and that she also discovered that the sum of $20.50 previously paid to her as an installment on the Chernow note was in fact receipted for by her as an installment paid on the Harris note. Thereafter she made numerous efforts to secure the original Chernow note from appellant, but she was unable to get in touch with him until finally when she did obtain an audience with him he not only refused to give her said note, but peremptorily and profanely ordered her out of his office.

[2] The foregoing evidence, if true, is legally sufficient in our opinion to sustain the verdict of the jury, for it establishes an agency between appellant and Mrs. Keach for the disposal of her property for a commission, and a consummation of the purpose of the agency. It also proves that the promissory note in question was received by appellant as her agent in the course of his employment, as part of the purchase price which legally belonged to her, and that said note was treated as her property at the time of its execution and delivery to appellant, the understanding being that it was to be used for her use and benefit; and, lastly, the evidence adduced by the prosecution, the essential features of which are hereinabove set forth, is legally sufficient, if true, to negative appellant's claim of good faith in appropriating said note to his own use, for it shows an intention to defraud both Mrs. Keach and Chernow.

[3] Many of the facts above narrated, it is true, were established by the testimony of Mrs. Keach, which appellant, in the exhaustive briefs filed in his behalf, severely arraigns as being false and discredited, and he argues that the evidence offered in his behalf in contradiction thereof, particularly his own testimony, was more than sufficient to show that the testimony of Mrs. Keach was inherently improbable. Assuming that her testimony was not given with the same degree of clearness and exactness which characterized the giving of the testimony of other witnesses in the case, still it has not been demonstrated that the material portions thereof are inherently false or even improbable, and the jury has declared by its

verdict that she told the truth; and furthermore, the ownership of said note was not established by her testimony alone, but was proved mainly by the testimony of Chernow and of his attorney.

We find nothing in the testimony of appellant as to his business dealings with Spencer to change the situation. The latter's testimony was not available because of his sudden death before trial, it appearing from the record that he committed suicide; but there is no evidence to show that Spencer was authorized by Mrs. Keach to make or accept terms of sale for her different from those already referred to, and consequently any writing which may have been signed by him to the contrary was not binding upon her.

[4] With reference to the charge of misconduct on the part of the district attorney, we think the transgressions complained of are not of sufficient importance to demand a reversal of the case, but even if they were, the record discloses that appellant made no assignments of error, nor did he request the court to instruct the jury to disregard the language or conduct now complained of, and consequently the judgment could not, in any event, be reversed on that ground. (*People* v. *Warr,* 22 Cal. App. 663 [136 Pac. 304]; *People* v. *Shears,* 133 Cal. 159 [65 Pac. 295].)

Appellant has also devoted much argument in his briefs to a discussion of the constitutional rights of appellant, but we fail to see where there are any constitutional questions even remotely involved  The ownership of the property alleged to have been embezzled, and its fraudulent appropriation, constituted the determinative questions, both of which were resolved against appellant upon substantial evidence. It is therefore our conclusion that the judgment of conviction and the order appealed from must be affirmed. It is so ordered.

Cashin, J., and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 17, 1927.