[Crim. No. 1948.   First Appellate District, Division One.—July 22, 1937.]

THE PEOPLE, Respondent, v. ALPHONSE BUYLE et al., Appellants.

Aaron Sapiro and Faulkner & O'Connor for Appellants.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

CASHIN, J.—The jury by its verdict found both defendants guilty of burglary in the second degree. After denying their motions for a new trial, in arrest of judgment and for probation, the court pronounced its judgment, sentencing them to imprisonment at San Quentin for the term prescribed by law. Both defendants appealed, claiming that the district attorney was guilty of prejudicial misconduct in his interrogation of prospective jurors and in his closing argument, and

that the court erred in its instructions as to the kind of structure that could be burglarized, in its admission of evidence of other crimes and in its curtailment of the cross-examination of the principal witness for the prosecution. Since they do not question the sufficiency of the evidence to support the verdict, it will be unnecessary to set forth all the evidence, but it will suffice to state merely such portion thereof as is required to fully consider the assigned errors. By so doing attention will be concentrated upon the controverted issues without any danger of distraction therefrom by digression into undisputed matters.

Defendants contend that the district attorney committed reversible error in asking each of seventeen prospective jurors on *voir dire* whether he or she belonged to the communist party, and in stating, in response to the court's query as to the materiality of such question, that communism was involved in the case. They argue that thereby the district attorney insinuated that they were communists and that such insinuation so prejudiced the jury against them that they were really convicted for their supposed political beliefs rather than for the crime charged. However, the court repeatedly on its own motion and at defendants' request admonished the jurors that such question concerned their qualifications only, and that, if chosen, they were not to consider it as evidence in the case. It must be assumed that this admonition was obeyed. Defendants' attorneys also asked most of the jurors whether such question created any prejudice against their clients and whether each would try the case impartially and solely upon the evidence adduced. The answers to these last questions clearly show that no juror was misled by the district attorney's question into believing he could properly consider communism as an issue. No claim is made that the question of defendants' guilt or innocence was close. It would appear therefore that the interrogation, even if erroneous, was not prejudicial.

But it does not appear that the interrogation was improper. The prosecution and the defense were both entitled to a trial by fair, impartial and unbiased jurors and, in order to ascertain the existence of a disqualifying partiality or prejudice, had the right to examine each juror as to his state of mind in reference to the case. In the background there appears a strike involving a union, of which defendants

were members, and a large oil corporation. The possession by a juror of a prejudice against either party to the strike might easily have caused him to return a verdict which would reflect such prejudice. Properly both parties fully examined the jurors as to any financial interest in the corporation or friendship with its officers. They also inquired whether a juror or any relative was a member of a union and what feeling and attitude each had toward a striking union and the employer. In view of the well-known tenets of communists as to industrial strife, the question asked by the district attorney is akin to the other questions, and was proper. (*People* v. *Fitzgerald,* 14 Cal. App. (2d) 180 [58 Pac. (2d) 718].) In order to ascertain whether a juror is prejudiced in a particular case it has always been held proper to inquire as to his membership in any political, religious, social, industrial, fraternal, law-enforcement or other organization whose beliefs or teaching would prejudice him for or against either party to that case. (Notes, 31 A. L. R. 411; 73 A. L. R. 1208.) Refusal to permit interrogation of prospective jurors as to their membership in the "know-nothing party" was held to be reversible error in a criminal action against a foreigner. (*People* v. *Reyes,* 5 Cal. 347.) In a prosecution for placing and attempting to explode dynamite with intent to injure and terrify certain persons, it is not improper for the district attorney in examining jurors to ask whether they believe in the doctrine of a certain political party known as "direct action", which signifies that physical force is approved as a means to secure desired ends, it not being shown that the defendant belongs to that political party. (*People* v. *Warr,* 22 Cal. App. 663 [136 Pac. 304].) In *People* v. *Vitelle,* 61 Cal. App. 695 [215 Pac. 693], a prejudice against the Ku Klux Klan was held to disqualify a juror in a prosecution of a member of the Klan. In an action to recover damages for personal injuries caused by the negligent operation of an automobile, it was held proper to ask a juror if he was a member of an automobile club which carried insurance. (*Nichols* v. *Nelson,* 80 Cal. App. 590 [252 Pac. 739] ; see, also, *Watson* v. *Whitney,* 23 Cal. 375; *People* v. *Car Soy,* 57 Cal. 102.) The present case cannot be distinguished from the cited ones merely because the district attorney also stated that this case involved communism. He did not thereby state either that defendants were communists or that communism

was an issue. The thought he was conveying was that the background of the strike would cause a communist to view with favor the acts of the defendants. The statement was proper to show the materiality of the examination. If it had not been material, it would have been improper.

█ Towards the end of his lengthy closing argument, the district attorney remarked that everyone knew that a communist believed in direct action; that he had asked the question as to membership in the communist party on *voir dire* because he did not wish communists on a jury in this type of case and that the evidence showed some communism in the activities described. Defense counsel assigned these remarks as misconduct but did not ask for any admonition. However, the court voluntarily instructed the jury that there was no evidence as to communism and that they were limited in their deliberations to the evidence. It is evident from what was said at the time of these remarks that the district attorney was replying to an argument of defense counsel. The record does not contain the latter argument as required by the rules, and therefore the validity of defendants' assignment of error cannot be determined. (*People* v. *Bragdon,* 103 Cal. App. 20 [283 Pac. 881]; *People* v. *James,* 133 Cal. App. 751 [24 Pac. (2d) 859]; *People* v. *Gregory,* 12 Cal. App. (2d) 7 [54 Pac. (2d) 770].) Defendants' argument exaggerates the importance and effect of several sentences in an address that occupied all of the morning session of court in its delivery.

█ Defendants contend "that the court erred in failing to properly instruct the jury as to what constitutes a house, building or structure that could be broken into for the purpose of committing theft, so as to constitute burglary". Section 459 of the Penal Code defines burglary as follows: "Every person who enters any *house . . .* or other *building . . . ,* with intent to commit grand or petit larceny . . . is guilty of burglary." (Italics ours.) The pertinent part of the indictment charged that the defendants "did wilfully, unlawfully and feloniously enter the *house* and *building* of the Daniels Construction Company, more particularly described as being a *powder magazine* approximately six feet six inches in height, seven feet in width and thirty-six feet in length, having walls of rock, wooden planking flooring, and a door six feet high and three inches thick, said door being composed of steel and wood". (Italics ours.) The com-

pany's superintendent, in describing the powder magazine, testified that it was an excavation dug out of a hill, approximately 30 or 35 feet in depth, 6 feet in width and 6½ feet in height; that the floor was wooden planking, laid on dirt; that the rear, side walls and roof were formed of natural earth and rock, with some planks overhead to prevent a cave-in; and that the door did not constitute the entire front wall, as there was a little space between its edge and the side walls. The court gave the following instruction: ''A house, in the sense of the statute, is any structure which has walls on all sides, is covered by a roof, and is used to house or protect persons and their property from the elements or other dangers, and if it has these characteristics, it is none the less a house merely by virtue of the fact its walls and roof may be produced by an excavation in the hillside.'' It refused to give, as requested by defendants, the following instruction: ''I charge you that the so-called 'magazine' that has been referred to in the testimony is not such a structure as can be subject to the crime of burglary under the law of the State of California, and you should return a verdict of not guilty as to the defendants.'' Since there is no dispute as to the characteristics of the powder magazine, whether or not it was a house or building is purely a legal question. (*People* v. *Coffee,* 52 Cal. App. 118 [198 Pac. 213].) If it was neither, an entry therein could not be burglary, and the indictment did not charge nor the evidence establish the crime of burglary. (*People* v. *Gibbons,* 206 Cal. 112 [273 Pac. 32].)

''A house, in the sense of the statute, is any structure which has walls on all sides and is covered by a roof.'' (*People* v. *Stickman,* 34 Cal. 242, 245.) Although this definition has been applied in several cases (*People* v. *Coffee, supra; People* v. *Gibbons, supra; People* v. *Franco,* 79 Cal. App. 682 [250 Pac. 698]), to test whether a particular structure was a house or building, there seems to be no decision in this state determining whether a cave or dugout, similar to the powder magazine, would meet its requirements. The powder magazine meets all such requirements, for it had walls on all sides and was covered by a roof. The earthen composition of the walls and roof, and their location below the level of the ground, seem immaterial, for the definition contains no specification of such matters. The powder magazine also meets the test of the following much quoted definition: A building is

"a structure which has capacity to contain, and is designed for the habitation of, man or animals, or the sheltering of property". (*Clark* v. *State,* 69 Wis. 203 [33 N. W. 436, 2 Am. St. Rep. 732].) However, in other states, caves or dugouts have been held to be buildings. In *State* v. *Sanders,* 81 Kan. 836 [106 Pac. 1029], it was decided that a dugout or cave 13 feet long, 10 feet wide and 7 feet deep, mostly below the surface of the ground, covered with a roof and entered through a door made of lumber securely fastened to the structure, and used for the storage of food, was a building within the meaning of a statute which punished "every person who shall willfully, unlawfully and maliciously break, destroy or injure the door or window of any dwelling house, shop, store or other house or building". In its decision the court said: "The dugout or cave injured and destroyed by appellants was a substantial structure securely inclosed, and was used for the storage and preservation of food, vegetables and the like. It is none the less a building because it was constructed partly under the surface of the ground, or that its walls were of earth instead of wood or other material. It was a completed structure entered through a door which formed a part of the house." In *State* v. *Clark,* 221 Mo. App. 893 [288 S. W. 77], a hole dug 3 or 3½ feet deep, 3 or 4 feet wide and 6 or 7 feet long, and covered by some boards and a tarpaulin, was held to be a building within the meaning of a penal law which declared every building where intoxicating liquor was manufactured a public nuisance. A concrete underground chamber containing apparatus used in the operation of a gasoline station was held to be a building within an injunction against the erection of a building on certain land. (*Jenney* v. *Hynes,* 285 Mass. 332 [189 N. E. 102].) The court there said: "Underground structures have often been used for dwellings as well as for many other purposes. In a number of cases they have been held to be buildings." A vat 6 or 8 feet deep and 6 feet in diameter, constructed of heavy oak timbers, which is partly sunk in the ground, having a hinged cover secured in place by a lock, and which is used for the storing of hides, is a storehouse within the meaning of that word as used in the statute defining burglary. (*Steele* v. *State,* 80 Neb. 9 [113 N. W. 798, 127 Am. St. Rep. 141].) From these authorities it would appear that the instruction given by the court was correct and the one refused by it was erroneous.

■ Defendants further assert that the court erred in permitting the prosecution to prove that on the night of the burglary dynamite and fuses were also stolen from a locker-box in the vicinity of the powder magazine, and that subsequently the defendants had possession of the dynamite and fuses at various places. As was said in another burglary case (*People* v. *McGill*, 82 Cal. App. 98, 102 [255 Pac. 261, 263]) : ''The general rule against the admission of evidence of other crimes is well settled. But certain exceptions to the rule are also well recognized. Generally speaking, such evidence is admissible when it tends to establish intent, or guilty knowledge, motive, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, when it tends to connect the defendant with the crime charged, or when the other crimes are a part of the *res gestae*.'' No witness saw the defendants enter the powder magazine, although several of them later saw them in possession of two cans of gunpowder which had been taken therefrom. It is a fair inference from the proximity in time of the commission of the two thefts and the similarity of the articles stolen, that the gunpowder and dynamite were stolen by the same persons. It is also a fair inference from their possession of it that the defendants stole the dynamite. Therefore it is reasonable to conclude that the defendants, in stealing the gunpowder, committed burglary. The evidence was clearly admissible to prove (1) motive, (2) a common plan or scheme, (3) to connect the defendants with the burglary, and (4) as part of the *res gestae*. There is no merit in defendants' argument that the greater length and detail of the testimony as to the theft of the dynamite, as compared to that directly bearing on the burglary, distracted the jury's attention from the crime on trial. (*People* v. *Lapierre*, 205 Cal. 462 [271 Pac. 497].)

■ The defendants lastly complain that the court erroneously would not permit them to attack the credibility of the principal prosecution witness by cross-examining her as to her true name and assumed names, and as to her illicit cohabitation with a certain man. A witness may not be impeached by evidence of particular wrongful acts other than a conviction for a felony. (Code Civ. Proc., sec. 2051.) It follows therefore that a witness may not be impeached by

showing the assumption of a fictitious name or specific acts of unchastity. (27 Cal. Jur. 133.) Therefore the court correctly denied cross-examination as to such matters. (*People* v. *Pappens,* 5 Cal. App. (2d) 544 [43 Pac. (2d) 371].)

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant Rodger to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 19, 1937.