[Crim. No. 1551. Third Appellate District.—May 3, 1937.]

THE PEOPLE, Respondent, v. ALPHONS BUYLE, Appellant.

Aaron Sapiro and Robert B. Fowler for Appellant.

U. S. Webb, Attorney-General, and Wilmer M. Morse, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The appellant in this case was tried before the court sitting without a jury, and found guilty of an offense based upon section 5 of the act known as Act No. 2433, Deering's General Laws of California, page 1161. From the judgment following this conviction, the denial of his motion for new trial, and denial of motion in arrest of judgment, the appellant appeals.

As no appeal lies from the denial of a motion in arrest of judgment, that portion of the attempted appeal may be here dismissed.

Section 5 of the act referred to, so far as the offense of the appellant is concerned, relates to the reckless and malicious possession of certain explosives on the highway, where people pass and repass in the county of Stanislaus.

The offense with which the appellant was charged and convicted is really a companion case with that of *People* v. *Fitzgerald et al.*, reported in 14 Cal. App. (2d) 180 [58 Pac. (2d) 718], to which reference is hereby made for a more detailed statement than is thought necessary to be made in this opinion.

The appellant urges as grounds for reversal, the unconstitutionality of sections 5 and 6 of the act referred to, and also, the insufficiency of the evidence to sustain the judgment of conviction, for the reason that the appellant did not have actual, physical or manual possession of the dynamite referred to in the testimony; that such actual, manual and physical possession is shown by the testimony to have been in one of the other occupants of the Nash sedan in which the appellant was riding, whose name was Fitzgerald.

■ It appears that upon the submission of the cause to the court for decision the court remarked that he would prefer to omit from consideration, and had done so as far as it was humanly possible to do so, the testimony of the witness Scrudder. Upon this statement the appellant urges in effect that the transcript must be read and the cause considered as though the testimony of Scrudder were eliminated therefrom. This conclusion, however, does not follow. No motion to strike out the testimony of the witness Scrudder was made, nor is there anything in the record which indicates the improbability or untruthfulness of any portion of Scrudder's testimony. While this court is not called upon to express any opinion as to the character of the witness known as "James F. Scrudder", it is due to him for us to state that we have carefully compared his testimony with the statement made by the appellant to the district attorney of the county of Stanislaus, and others, on the night of his arrest, and if the statement then and there made by the appellant is true, then and in that case the testimony of the witness Scrudder is likewise substantially correct. In other words, the statement made by the appellant corroborates the testimony of the witness Scrudder and the testimony of the witness Scrudder corroborates the statement made by the appellant. ■
We may here add that the witness Scrudder was only a feigned

accomplice, and therefore his testimony is not subject to the limitations contained in section 1111 of the Penal Code. (*People* v. *Keseling,* 35 Cal. App. 501 [170 Pac. 627].) The testimony of the witness Scrudder and the statement of the appellant show that a number of persons, most of whom were defendants in the case of *People* v. *Fitzgerald, supra,* met in a restaurant in San Francisco; that two cars were used to convey the party to the town of Patterson, in the county of Stanislaus; that two packages of dynamite were carried, one package in a car known as the ''Chrysler'', the other in a car known as the ''sedan'', in which the appellant was an occupant; that the sticks of dynamite were wrapped in newspapers; that the appellant carried upon his person and inside of his shirt, certain fuses; that when the party in the Nash sedan reached a point near its intended destination in the county of Stanislaus, and being stopped by certain officers, disposed of both dynamite and the fuses; that the appellant himself disposed of the fuses that had been carried upon his person.

The only difference in the testimony between Scrudder and the appellant as to the dynamite carried in the Nash sedan is that Scrudder testified that the dynamite was personally carried by an occupant of the Nash sedan, named Fitzgerald. The testimony of Scrudder and also of the appellant is to the effect that the purpose of the trip to Stanislaus County was to get some ''finks'' (strike breakers).

After reading every word of the testimony in this case, we find that a fair summary thereof is contained in the brief of the respondent, which we here set forth, to wit:

On the evening of April 20, 1935, two investigators employed in the independent detective and patrol service, named Alfred B. Hughel and Sidney Lewis, respectively, were patroling the highway between the towns of Westley and Patterson in the county of Stanislaus, looking for a car bearing license No. 5J2930. The car, a Nash sedan, was found proceeding towards Patterson. They followed the car until it turned from the highway on a dirt road where it parked. The investigators proceeded on towards and into Patterson without stopping. On the way they observed a Chrysler coupe parked on the highway just north of the town. At Patterson Hughel notified certain other men, including Constable Kirk and Chief of Police Busingdal. This was approximately 11 o'clock at night. They then went back up

the highway to where the Chrysler was still parked, stopped, and ordered the occupants out, and turned them over to the constable and the chief of police, who had followed them from Patterson. The investigators then got into their car and proceeded up the highway towards the side road where the Nash sedan had been parked. As they proceeded up the highway they met the Nash sedan coming south towards the place where the Chrysler was parked. They passed the Nash, turned around, and followed it a ways and then drove up alongside and Hughel jumped to the running-board of the Nash, and ordered the occupants to stop, which they did. Afterwards, under Hughel's direction, they proceeded to the Chrysler car where all of the men from the two cars were lined up. The defendant was in the Nash car occupying a front seat with one Marchant and Scrudder. Scrudder was driving, Marchant sat in the middle, and appellant sat on the right side of the car.

The cars were immediately searched while the men were lined up on the highway and a package containing five sticks of forty per cent strength dynamite and one stick of sixty per cent strength dynamite were found in the Chrysler car.

A package, containing two lengths of fuses, one of which was capped, was also taken from the Chrysler car.

About 5 o'clock the following morning, right after daybreak, Hughel and Lewis returned to the place, and upon searching through the grass found on the side of the road where the Nash had been parked, which was the opposite side from that on which the Chrysler was parked, a package containing six sticks of dynamite and two rolls of fuse, one of them capped. The dynamite in this package also consisted of five sticks of forty per cent strength and one stick of sixty per cent strength.

The men from the two cars were taken the same night of the arrest to the county jail, arriving there about 1 o'clock, where they were questioned by the district attorney. The defendant's statement is set forth in the transcript. In his statement he admitted that he was in the Nash car, and stated that that afternoon the men in the party met in San Francisco at a restaurant where they left their identification marks; that the dynamite was divided into two packages; that one package was placed in the Nash car; that defendant himself carried a length of fuse; that the purpose of the trip

was to "get some finks" (strike breakers); that defendant was told to carry the fuse as they would "need it".

The testimony of Scrudder corroborates the testimony above paraphrased.

█ In view of sections 31 and 971 of the Penal Code it is unnecessary for us to review the large number of cases from different jurisdictions contained in the appellant's brief relating to the subject of possession. In consideration of the sections just referred to, the question of actual, manual possession of the dynamite, or whether any portion of the dynamite was actually upon the person of the appellant while riding in the Nash sedan over the highway in the county of Stanislaus, is wholly immaterial. It was not necessary to show that the dynamite was actually upon the person of any one of the occupants of the Nash sedan. It is sufficient to show that the dynamite was in the car, that the appellant had knowledge thereof (which the testimony sufficiently shows), and we may also add, the purpose of the trip was to get or intimidate certain strike breakers called "finks", as shown by the statement of the appellant as well as by the testimony of the witness Scrudder.

Section 31, *supra*, provides that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, etc., are principals and may be prosecuted as such.

Section 971, *supra*, specifies further that all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense or aid and abet in its commission, though not actually present, may be tried and punished as principals. Thus, the possession of the dynamite by any one of the occupants of the sedan car, was the possession under the sections just referred to of all of the occupants, and every one of the occupants could be properly tried and punished as a principal.

The testimony to the effect that Fitzgerald had manual possession of the dynamite was equally sufficient to show, under the sections, that the appellant being one of the parties, and carrying the fuses, was likewise in possession of the dynamite, and if that dynamite was being conveyed for a reckless and malicious purpose, the appellant, under section 5 of Act No. 2433, *supra*, was committing the offense therein described as a felony.

What we have just stated is amply supported by the cases of *People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861], *People* v. *Schmidt,* 33 Cal. App. 426 [165 Pac. 555], and *People* v. *Welch,* 89 Cal. App. 18 [264 Pac. 324].

In *People* v. *Fitzgerald, supra,* the validity of section 6 of Act No. 2433, *supra,* was very carefully considered, and instead of setting forth herein what was there said, for the sake of brevity we content ourselves with reference to the clear and learned consideration given the validity of that section in the opinion of the Fitzgerald case. We may add, however, that the application of the presumption mentioned in section 6 of the Act No. 2433, *supra,* is readily distinguishable from the presumption mentioned in the act to control and regulate possession, etc., of revolvers, approved June 13, 1923, Statutes 1923, page 695. In section 6 the presumption is made applicable to the offense or offenses named in section 5 of the same act. In other words, that where a person other than one entitled to have possession of dynamite for a legitimate purpose was found to be in possession thereof, the presumption *prima facie* followed that such possession was illegal and denominated reckless and malicious. In the act relating to the possession of firearms the portion of the act involved did not relate to anything connected with the illegality of the possession of certain firearms without a license, but went farther, and to the effect that if one who had possession of a firearm without also being licensed to carry the same, and committed some offense, then the act purported to raise the presumption that the man intended to commit such particular offense.

The record shows that in the case of *People* v. *Murguia,* 6 Cal. (2d) 190 [57 Pac. (2d) 115], the court instructed the jury to the effect that if the defendant was carrying a weapon without a license, then it was presumed that he intended to commit the crime of murder with which he was charged.

Whether the trial court, in its consideration and determination of this cause, gave any consideration to the presumption mentioned in section 6 of Act No. 2433, *supra,* cannot be determined by the record, but the testimony which we have set forth herein in the abbreviated form shows the reckless and malicious possession and purpose with which the dynamite was being conveyed, without the necessity of applying any presumption. We may here add that the testimony also shows that the appellant was not one of the excepted persons

mentioned in the act, but his occupation was that of a gang-boss on some pier in San Francisco.

One of the main contentions urged by the appellant for reversal is that section 5 of the Act No. 2433, *supra,* is void in that the word ''possession'' does not appear in the title of the act, and therefore, that the limitation of section 24 of article IV of the Constitution applies. That section requires that every act should embrace but one subject which shall be expressed in the title, and if any subject is embraced in the act which is not expressed in the title, that portion is void.

As said in the *Estate of Wellings,* 192 Cal. 506 [221 Pac. 628], and quoted with approval in the case of Fitzgerald, *supra*: ''It has long been settled that the constitutional provision requiring the subject of an act of the legislature to be expressed in the. title must be liberally construed, and that all that can be required to be contained therein to meet the provision is a reasonable intelligent reference to the subject to which the legislation is addressed.'' Irrespective of what language may have been used in the case of *People* v. *Murguia,* (Cal. App.) 42 Pac. (2d) 325, the decision in the case of *People* v. *Fitzgerald, supra* (hearing denied by the Supreme Court), where a parallel question was considered and determined, must be given binding force and effect, even though the Supreme Court in deciding the case of *People* v. *Murguia, supra* (6 Cal. (2d) 190 [57 Pac. (2d) 115]), did not mention the specific subject of the omission alleged to be in the title of the act there under consideration.

In addition to what appears in the opinion in the Fitzgerald case, *supra,* we may further consider the title of Act No. 2433. It reads: ''An act to protect life and property against the reckless and malicious use or handling of dynamite and other explosives.'' In the attempt to provide for the protection of life and property the legislature specifies a number of specific acts, some to be performed, some to be prohibited in order to accomplish such purpose. Section 1 requires a record of sales; section 2 sets forth what the record must show; section 3 makes such record or journal open to inspection; section 4 relates to forfeitures and punishment; section 5 relates to possession of the explosives in certain places and localities; section 6 applies a presumption *prima facie* to others than accepted persons; section 7 relates to punishment for unlawful possession; section 8 prohibits de-

posits of explosives; section 9 takes up the subject of transportation of high explosives.

· That every one of the requirements and prohibitions contained in the different sections is calculated to protect life and property is beyond question. The purpose of the act, as shown by the title, is to protect life and property against the careless and malicious use or handling of dynamite. One question seems to us to answer definitely as to whether section 5, *supra,* comes within the purview of the title: Does the prohibition of the reckless and malicious possession of dynamite on the highways of the state tend to protect life and property? There can be but one answer to this question. While there may be a technical distinction between a very refined definition of the word "use" and the word "possession", it is certain that whether the one or the other term is used in the section, the whole intent and purpose of the legislature is to protect life and property, and if section 5 answers the foregoing question affirmatively, as it does, we necessarily come to the conclusion that the prohibited purposes within section 5 of Act No. 2433, *supra,* are within the title and within the intention of the legislature in its enactment to protect life and property.

While possession may be said very properly not to necessarily include use and handling, on the other hand there can be no use and handling without possession. Therefore, in employing the terms "use" and "handling", the legislature broadened the title sufficiently to include possession. It has been frequently held that the title to an act need not embrace a catalogue of all of its contents. (*Abeel* v. *Clark,* 84 Cal. 226 [24 Pac. 383]; *Ex parte Hallawell,* 155 Cal. 112 [99 Pac. 490].)

Likewise, it has been held that words giving a general scope to an act found in the title are not limited by particular or descriptive words used in the different sections thereof. (See *Hunt* v. *Manning,* 24 Cal. App. 44 [140 Pac. 39].)

The general scope of the title of the act in this case, as we have said, shows that the purpose of the legislature was to protect life and property.

In construing section 24 of article IV of the Constitution, it has been held that provisions which are logically germane to the title may be included therein. (*Evans* v. *Superior Court,* 215 Cal. 58 [8 Pac. (2d) 467]; *Buelke* v. *Levenstadt,*

190 Cal. 684 [214 Pac. 42]; *Robinson* v. *Kerrigan*, 151 Cal. 40 [90 Pac. 129, 121 Am. St. Rep. 90, 12 Ann. Cas. 829].)

There can be no question, as we have stated, that all of the required and prohibited acts set forth in the act of the legislature, known as Act No. 2433, support the purpose of the legislature to protect life and property, and we think legitimately come within the meaning and scope of the title used.

 Notwithstanding the contention of the appellant that the evidence is insufficient to establish guilt, it appears to us that the testimony set forth in the transcript establishes beyond all reasonable doubt the illegal and unlawful possession of dynamite on the part of the appellant, and that the trial court could not do otherwise than find the appellant guilty as charged.

Likewise, we conclude that the proposition of the appellant that sections 5 and 6 of the Act No. 2433, *supra,* are unconstitutional, is untenable.

The order and judgment are affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1937.