[Crim. No. 6052.   Second Dist., Div. Two.   Dec. 19, 1957.]

THE PEOPLE, Respondent, v. RICHARD VAUGHN McLAUGHLIN, Appellant.

*Assigned by Chairman of Judicial Council.

Mathews & Hill and Edward I. Gritz for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

ASHBURN, J.—Appellant and one Beaudo were charged with burglary and grand theft. Beaudo pleaded guilty to petty theft. Appellant was tried without a jury, found guilty of burglary in the second degree and not guilty of the charge of grand theft. Probation having been denied he appeals

from the judgment. He also attempts to appeal from an order denying motion for new trial, but the record reflects no such motion or order and that attempted appeal must be dismissed.

The appeal rests upon a claim of insufficiency of the evidence because (1) appellant's confession was received in evidence although it was extorted from him through threats and fear, and (2) the testimony of his accomplice was not corroborated.

The judgment of guilty implies the truth of the following facts. On the night of April 28-29, 1957, shortly after midnight (Monday morning), the two defendants were arrested near the Best Bet Auto Parks and Wrecking Yard in Monrovia. Situated on that property was an old passenger bus which was used as an office; the wheels had been removed and it sat on concrete blocks; it had a door, windows and roof and was a building within the burglary statute (*People* v. *Burley*, 26 Cal.App.2d 213-214 [79 P.2d 148]). Hanging on the wall when the place was closed on Friday and Saturday (April 26 and 27), were three spotlights. Though the door of the office was not locked, the yard was surrounded by a chain link fence 5 or 6 feet high, and the entrance gate was locked by means of a chain and padlock on the night of the offense. In the yard were auto parts and appliances. Early on Monday morning it was discovered that one of the spotlights had been taken from the office and was lying outside the yard a few feet from the fence; a tire, fuel pump and six-volt battery had been pushed under the fence to the outside and were lying there. No one had had permission to enter the yard or the office.

About midnight of Sunday one Huyck saw defendants about three-quarters of a block from the Best Bet yard; Beaudo was sitting in a Ford sedan at the wheel and appellant was walking toward it, about 5 feet away. When asked what they were doing there appellant said they had a bad battery in the car and he had gone to the gas station on the corner to get help or a push. Huyck told them the police had been called and had their license number, but if they had done nothing they were all right. It was true that the police were on their way in response to information concerning a suspicious car in the neighborhood. As they approached they saw an automobile, later identified as Beaudo's, "speeding away . . . at a very fast rate of speed" in the opposite direction from theirs; they turned and tried to follow it, got the license number but lost the vehicle which, according to appellant's

later confession, made a right turn on Myrtle Avenue, then another right turn and stopped behind a building. The police searched the area but could not find the vehicle until after defendants' arrest. A little later they found it behind 1617 South Myrtle Avenue, with the keys in the ignition and the engine still warm. While checking the area the officers saw appellant and Beaudo walking along the street with a dog. Appellant's confession said that when the car was parked he ran home, about one and a half blocks from there, got the dog, met Beaudo again and they started walking the dog. Both asserted to the arresting officers that they were exercising the animal and Beaudo said he had parked his car in a parking lot near Happy's liquor store.

Taken to the police station, McLaughlin at first denied any connection with the crime. This was on Monday morning. Later on that day his codefendant Beaudo handed Officer Davidson a paper napkin bearing a message written by appellant; his first name is Richard and Beaudo's is William. The message reads: "Bill . . . if it's okay I'll take to them tomorrow . . . and if they ask me why I didn't tell them sooner I'll say I didn't want to say anything about it to them, OKAY BILL? Rick." "Bill Say that you did it and I'll tell them that you where coming over to my house and you seen me coming up the street with my dog and you said to me that the cops were chasing you, so you had to get ride off your car because of that. And then you said let's go this way, so we walk up the street to the junk yard and you ask me to push the stuff under the fence so I tried to push the stuff under the fence but I couldn't do it, so I pick up the small stuff and throw them into the bushes and took off up the street. Bill you tell them that and I'll get you out of here soon. Tell me if it's okay to say that and then we both take off out of the state. Rich."

The next day the officer interviewed appellant a second or third time, showed him the napkin and asked if he wanted to change his story and tell the truth. McLaughlin replied, "I might as well." Thereupon a confession was dictated, typed and signed. It says that appellant and Beaudo were riding around in Beaudo's Ford sedan and he said he needed a battery; appellant said he knew where they could get one and they drove to Nolan Battery Company for that purpose, but the dogs were barking and so they went on to the Best Bet lot. He, McLaughlin, climbed over the fence, went into the building, looked around but took nothing; then he and Beaudo

picked up a tire, fuel pump, six-volt battery and pushed them under the fence; climbed back over the fence and returned to Beaudo's car. At that point a man (Huyck) asked what they were doing and appellant told him he had been to the gas station to get a push because the battery was dead. Huyck then said their license number had been turned in to the police. They pushed the car until it started and then drove off, passing the police unit, whereupon they made a right turn into Myrtle Avenue and then another right turn behind some building. The document concludes with the declaration: "I hereby declare that this statement is made by me free and voluntary on my part; no force or violence has been used to force me to talk, nor has any hope or offer of immunity or reward been made or held out to me, and I am not acting under any menace, duress, fraud or the undue influence of any person. I further declare that I have read the above statement and the same is true and correct," and was signed by appellant.

The claim that the confession was not voluntary rests upon the testimony of appellant and some prisoners occupying cells in the same cell block. Appellant testified that when first interviewed by Officer Davidson: "Well, he asked me first—— first he brought me up and he says, 'We got your fingerprints on the spotlight.' I said, 'You don't have nothing, man.' He said, 'If I catch you lying,' or something like that, that he would kick the—— . . . That he would kick the stuff out of me, and—— . . . If he caught me lying—he gave me several chances, or something like that—and if he caught me lying, he would kick the stuff out of me, you know." Also, that later in the cell block Davidson said that if his story and Beaudo's did not match, "he would put a .38 slug in me as soon as I got out, and he'd have every policeman in the police force waiting for me to turn 18 years old, so when I reached the age of the limit of all the juveniles, something like that." Appellant added that he was scared of Davidson after the latter said he would put a .38 slug in him. This alleged statement concerning the slug was corroborated by Beaudo, Castro, and partially by Johnson, all of whom were prisoners. Castro had been convicted of a felony and Johnson weakened on cross-examination to the point where he practically corroborated the police officer. Davidson denied making any such statement as appellant attributed to him, and further said: "Q. BY MR. SMITH: I'm going to ask you if you made this statement, in substance

and effect: That you told McLaughlin that some night a police officer might shoot him if he didn't stay out of business areas after closing time? A. That's correct. . . . Q. Sergeant Davidson, in other words, there was never a mention made of a .38 slug at all? A. Not in the sense that I used the words. That would be a .38 slug used, in any respect. Q. Excuse me. I'm not asking you for the sense. I'm asking you whether that statement was made, about a .38 slug? A. It's very possible that when I told him that he would get shot by a police officer that I used the words '.38.' I'm not saying that I didn't. But I did use it in the respect that a police officer would probably shoot him some night if he was caught in these places after dark." Also, that the confession was made freely and voluntarily and without any threats, force or violence having been used upon appellant.

█ The court ruled that the confession was voluntary and this court would not be free to upset that ruling if so disposed. The fact of conflict in the evidence binds in this situation as in all others. (*People* v. *Mehaffey,* 32 Cal.2d 535, 554 [197 P.2d 12]; *People* v. *Crooker,* 47 Cal.2d 348, 352 [303 P.2d 753].)

Appellant argues that the corpus delicti was not established because the testimony of the accomplice was not corroborated and hence appellant's own confession could not be received in evidence. The argument assumes an ironclad rule that the corpus delicti must be established before a confession can be received in evidence. █ Normal procedure does contemplate that prima facie proof of the corpus delicti be made before use of the confession, but this procedural matter does not rise to the dignity of a question of due process as appellant supposes; it lies within the discretion of the trial judge whose failure to follow the ordinary rule (except perhaps in extraordinary circumstances) does not amount to prejudicial error. (*People* v. *Hudson,* 139 Cal.App. 543, 545 [34 P.2d 741]; *People* v. *Cucco,* 85 Cal.App.2d 448, 453 [193 P.2d 86].)

█ In the instant case that prima facie showing was actually made before the confession was received in evidence. The proof furnished by the owner and the manager of the Best Bet, by Huyck and the police officers, made a sufficient prima facie showing that someone had entered the office with intent to steal and had taken a spotlight from the wall, which is all that is necessary to constitute burglary. (Pen. Code, § 459.) Appellant's connection with the crime is not of the

essence of corpus delicti. (*People* v. *Pearson,* 111 Cal.App. 2d 9, 28 [244 P.2d 35].)

■ Counsel's argument also overlooks the settled rule that the corpus delicti may be established by the evidence of an accomplice who in that respect needs no corroboration. (*People* v. *Briley,* 9 Cal.App.2d 84, 86 [48 P.2d 734]; *People* v. *Pearson, supra,* p. 28; *People* v. *Watkins,* 126 Cal.App.2d 199, 207 [271 P.2d 641]; *People* v. *Goldstein,* 136 Cal.App.2d 778, 789 [289 P.2d 581].) This follows from the language of section 1111, Penal Code: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense. . . ." ■ The cases hold that the only requisite corroboration is evidence which tends to connect the defendant with the commission of the crime. (*People* v. *Goldstein, supra,* 136 Cal.App.2d 778, 788-789; *People* v. *MacEwing,* 45 Cal.2d 218, 224 [288 P.2d 257].)

■ In addition to the proof above mentioned, Beaudo's evidence established the commission of the burglary. True, he attempted to shoulder the entire blame and thus exonerate appellant. But appellant's own confession, found to be voluntary, supplies the essential proof that he did take part in the burglary and is equally guilty with Beaudo. (*People* v. *Pearson, supra,* 111 Cal.App.2d 9, 28; *People* v. *Goldstein, supra,* 136 Cal.App.2d 778, 789; *People* v. *Briley, supra,* 9 Cal.App.2d 84, 86; *People* v. *Fountain,* 91 Cal.App.2d 158, 162 [204 P.2d 639].)

The attempted appeal from the nonexistent order denying a new trial is dismissed. The judgment is affirmed.

Fox, Acting P. J., and Richards, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.