[Crim. No. 40653. Second Dist., Div. One. June 29, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD CHARLES BROOKS, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and James A. Uyeda, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—The trial court found defendant guilty of second degree burglary (§ 459, Pen. Code); he appeals from the judgment.

About 11 p.m. defendant and codefendant Jackson and two other males stopped on Willowbrook near a loading dock at the rear of Boys Market; one of them cut the chain link fence while the other three watched the street; cutting and pulling away the fence and tin plate took about five minutes; one entered the loading dock through the hole and passed four cases of pop to others standing outside; proceeding northbound on Willowbrook their car was stopped by a security investigator and police.

Appellant contends there was no burglary because the loading dock is not a building within the meaning of section 459, Penal Code.[1] He argues that it does not have four walls and a roof as required by *People* v. *Gibbons* (1928) 206 Cal.App. 112 [273 P. 32] because two sides are chain link fence, and the fence does not connect with the roof leaving a small gap between the top of the fence and the roof.

Defendant was charged in the information with burglary in that he and codefendant Jackson entered "the enclosed loading dock and building occupied by Boys Market." In light of the language of this charge and section 459, Penal Code the issue is either, as framed by appellant, whether the "enclosed loading dock" is a "building" within the meaning of the statute or, as urged by the People, whether it is a part of the "building occupied by Boys Market." ▉▉ We conclude that (1) the loading dock alone satisfies the definition of a separate "building" within the contemplation of the statute, and (2) by being located at the rear of the store building and sharing a common wall the loading dock is an integral part of the "building occupied by Boys Market."

---

[1]Burglary is defined in section 459 in pertinent part: "Every person who enters any house, room, apartment, tenement, shop, warehouse, store ... or other building ... with intent to commit grand or petit larceny ... is guilty of burglary."

Boys Market is a retail store. The loading dock is used as a warehouse or storage portion of the store; inside at the time of the theft were paper bales and cases of soda pop. Behind the loading dock area is a parking lot loading area and behind that, Willowbrook. The loading dock is completely enclosed and all doors were closed and locked at the time of the theft.

The east wall of the store building housing Boys Market is the front of the retail store; the west wall of the store building is the rear; the loading dock is directly behind and attached to the store building on the west side; they have a wall in common—the west wall of Boys Market constitutes the east wall of the loading dock. The wall is of concrete block construction and has two roll-down steel exit doors of regular size leading from the store both of which were closed and locked at the time of the theft. The north wall also is of concrete block construction and is attached to the store building. The north and east walls constitute the foundation of the building occupied by Boys Market.

The west and south walls of the loading dock are made of chain link fence standing nine feet high covered up to six feet with tin. There is no gap or opening where the west wall of the chain link fence meets the north wall of concrete; the fence is flush against the end of the wall. The west wall of chain link fence consists largely of three swinging chain link gates also covered with tin, leading to the rear of three truck stalls; they are used for trucks to off load, and the gates can be opened only from inside; they were closed and locked at the time of the theft. At the south end of the loading dock is an interior concrete wall that sections off a small area also used for storage; the door to this area was closed and locked.

The entire enclosure is covered with a roof of corrugated tin. The poles upon which the chain link fence is attached go from the floor to the top of the roof. The chain link fence is nine feet high; sheet aluminum tin covers the chain link fence on the west and south running all the way from the bottom to about six feet up; the fence continued to the top on the west and south sides standing about nine feet high but does not run flush with the roof leaving a gap of six to twelve inches between the fence and the roof.

The first statutory definition of the crime of burglary (§ 459, Pen. Code) abolished "all the nice distinctions of the common law" (*People* v. *Stickman* (1867) 34 Cal. 242, 245), and a series of amend-

ments thereafter enlarged the scope of the original common law crime. (*People* v. *Alexander* (1966) 244 Cal.App.2d 301, 304 [53 Cal.Rptr. 65].) "The language of Penal Code section 459 could hardly be more comprehensive. A comparison of the burglary statute as originally enacted with the present one shows that 'The amendments have gradually drawn tight the loophole through which a defendant might hope to escape by showing that the structure entered was not within the statute.' (Comment (1951) 25 So.Cal.L.Rev. 75, 77.)" (*In re Christopher J.* (1980) 102 Cal.App.3d 76, 79 [162 Cal.Rptr. 147].)

The language of the statute is broad and comprehensive (*People* v. *Moreland* (1978) 81 Cal.App.3d 11, 20 [146 Cal.Rptr. 118]), and in determining whether a structure comes within the ambit of the statute our courts have been guided by the legislative intent to extend protection. (*In re Christopher J.*, 102 Cal.App.3d 76, 79 [162 Cal.Rptr. 147].) Thus, the language of section 459 encompasses structures that are not used for human habitation (*People* v. *Gibbons*, 206 Cal. 112, 114 [273 P. 32]; *People* v. *Stickman*, 34 Cal. 242, 245; *In re Christopher J.*, 102 Cal.App.3d 76, 78 [162 Cal.Rptr. 147]; *People* v. *Moreland*, 81 Cal. App.3d 11, 20 [146 Cal.Rptr. 118]), and are not a part of or permanently affixed to the realty (*People* v. *McLaughlin* (1957) 156 Cal.App.2d 291, 293 [319 P.2d 365]; *People* v. *Burley* (1938) 26 Cal. App.2d 213, 214-215 [79 P.2d 148]; *People* v. *Coffee* (1921) 52 Cal. App. 118, 120-122 [198 P. 213]).

To be a building "the structure need only be one having four sides and a roof." (*People* v. *Gibbons*, 206 Cal. 112, 114 [273 P. 32]; *People* v. *Searcy* (1957) 153 Cal.App.2d 799, 800 [314 P.2d 1002]; *People* v. *Burley*, 26 Cal.App.2d 213, 214 [79 P.2d 148]); and no legislative intent can be discerned to limit the word "building" to anything less than its broadest meaning. (*People* v. *Corral* (1943) 60 Cal.App.2d 66, 70 [140 P.2d 172].) Thus, giving effect to the legislative purpose of extending protection and the statute a common-sense construction (*People* v. *Malcolm* (1977) 47 Cal.App.3d 217, 223 [120 Cal.Rptr. 667]), our courts further enlarged the class to include a variety of structures (1 Witkin, Cal. Crimes (2d ed. 1963) Crimes Against Property, § 455, p. 417): retail store (*People* v. *Corral*, 60 Cal.App.2d 66, 70 [140 P.2d 172], see also *People* v. *Ceballos* (1974) 12 Cal.3d 470, 479, fn. 2 [116 Cal.Rptr. 233, 526 P.2d 241]), Beam House of tannery (*People* v. *Schafer* (1911) 161 Cal. 573, 576 [119 P. 920]), railroad car (*People* v. *Jefferson* (1877) 52 Cal. 452, 453), chicken house (*People* v. *Stickman*, 34 Cal. 242, 244; *People* v. *Coffee*, 52 Cal.App. 118, 122, 123-124 [198

P. 213]), garage not connected to a habitation (*People v. Picaroni* (1955) 131 Cal.App.2d 612, 617 [281 P.2d 45]), telephone booth (*People v. Nunez* (1970) 7 Cal.App.3d 655, 657 [86 Cal.Rptr. 707]; *People v. Miller* (1950) 95 Cal.App.2d 631, 634 [213 P.2d 534]), popcorn stand on wheels (*People v. Burley*, 26 Cal.App.2d 213, 214-215 [79 P.2d 148]), powder magazine in dugout in hillside (*People v. Buyle* (1937) 22 Cal.App.2d 143, 148-149 [68 P.2d 268]) and shelter for gas meter of a gas well (*People v. Alexander*, 244 Cal.App.2d 301, 304-305 [53 Cal.Rptr. 65] [shelter was open on one side; the court held it was a "mine" but also could be a "building"]; p. 305.)

What comprises four walls and a roof has been broadly construed to embrace such composition as chicken wire (see *People v. Coffee*, 52 Cal.App. 118, 121 [198 P. 213] [relying on *Williams v. State* (1898) 105 Ga. 814 [32 S.E. 129] in which the chicken coop was made of wire and covered with shingles]); natural earth and rock (*People v. Buyle*, 22 Cal.App.2d 143, 148 [68 P.2d 268]); glass (*People v. Jackson* (1933) 131 Cal.App. 605, 606-607 [21 P.2d 968]; *People v. Franco* (1926) 79 Cal.App. 682, 684 [250 P. 698]); folding glass (*People v. Nunez*, 7 Cal.App.3d 655, 657 [86 Cal.Rptr. 707]; *People v. Miller*, 95 Cal.App.2d 631, 634 [213 P.2d 534]) and an open door as a fourth wall (*People v. Picaroni* (1955) 131 Cal.App.2d 612, 619 [281 P.2d 45].) In holding that the dugout in the hill was a "building," the court in *People v. Buyle*, *supra*, 22 Cal.App.2d 143, indicated that the composition of a wall is not of prime importance. "The earthen composition of the walls and roof, and their location below the level of the ground, seem immaterial, for the *definition* [*building*] *contains no specification of such matters.*" (P. 148, italics added.) ▇▇▇ The fact that two of the four sides of the loading dock were constructed of chain link fence and tin does not render it any less a "building" in the contemplation of section 459, Penal Code. Further, the fact that there were swinging chain link gates on the west chain link fence, as pointed up by appellant, is of no real significance inasmuch as they were closed and locked and the entire area was enclosed at the time of the unlawful entry. (Cf. *People v. Picaroni*, 131 Cal.App.2d 612, 619 [281 P.2d 45] [door comprising fourth wall of garage open at time of theft]; *People v. Miller*, 95 Cal. App.2d 631, 634 [213 P.2d 534] [phone booth with folding glass door]; *People v. Alexander*, 244 Cal.App.2d 301, 304-305 [53 Cal.Rptr. 65] [one side of gas meter shelter open].)

Nor is it any the less a wall because the chain link fence does not go to the roof leaving a gap of six to twelve inches between the top of the

fence and the roof. The support poles to which the chain link fence is attached run from bottom to roof. The chain link fence runs nine feet to the top and is partially covered with tin. Without cutting the chain link fence and the tin there is no way one can enter the enclosure of the loading dock when, as here, the doors are locked. Whether or not at the time of the theft the gap was filled with strands of barbed wire, as indicated in some of the testimony, it would be most difficult if not impossible to gain entrance through the six- to twelve-inch gap nine feet off the ground. We know of no requirement that a wall reach to the top of a roof in order for a structure to be subject to burglary. For instance, in *People v. Young* (1884) 65 Cal. 225 [3 P. 813], the court held that a ticket office inside of another building the walls of which did not go to the roof but extended eight or nine feet high, "was properly described as a 'building,' . . . ." (P. 226.) Obviously the purpose of the chain link fence, concrete walls, roof, barbed wire and locked doors is to keep trespassers out of the loading dock and to protect Boys Market against thieves bent on stealing property stored or kept on the loading dock for delivery. Construing section 459 flexibly and in a common sense manner "with the principal objective of discouraging the social evil which that statute was designed to prevent" (*People v. Malcolm*, 47 Cal.App. 3d 217, 223 [120 Cal.Rptr. 667], fn. omitted) we conclude that the test should not be so much whether the walls touch the ceiling or roof but whether the walls act as a significant barrier to entrance without cutting or breaking. Certainly, the loading dock here meets that test. No one can enter the locked enclosure except through illegal means that is, without breaking into the concrete block construction, cutting the chain link fence and tin or breaking the locks on the gates.

In connection with appellant's contention that the loading dock is not a building, he argues that the area entered was designed primarily to be used as a parking area for trucks, not a storage area.[2] First, factually this is not true. Trucks park there only to make deliveries, and stored in the loading dock at the time of the theft were paper bales and cases of soda pop. ■ A building has been defined as "'a structure which

---

[2] A similar argument was advanced in another context without success in *People v. Corral*, 60 Cal.App.2d 66 [140 P.2d 172]. Appellant urged that because a modern department store is of large size and multifarious character it was not a store within the meaning of section 459 at the time the statute was amended. Said the court at page 70: "The character of a place as a store does not depend upon its size or the number of departments contained in it; but if it did, section 459 contains also the word 'building,' and in view of its context no legislative intent can be discerned to limit this word to anything less than its broadest meaning [citation], which undoubtedly comprehends the building housing the store in question."

has capacity to contain, and is designed for the habitation of, man or animals, or the sheltering of property.'" (*People* v. *Buyle*, 22 Cal.App. 2d 143, 149 [68 P.2d 268]; *People* v. *Alexander*, 244 Cal.App.2d 301, 305 [53 Cal.Rptr. 65]; *People* v. *Miller*, 95 Cal.App.2d 631, 634 [213 P.2d 534].) Second, the "language [of the statute is] broad enough to include buildings of any kind and used for any purpose." (*People* v. *Stickman*, 34 Cal. 242, 245.)

█ Finally, whether or not the loading dock alone satisfies the definition of a separate building within the meaning of section 459, physically it is part of the "building occupied by Boys Market," a retail store, and is subject to burglary under the statute. The evidence establishes that the loading dock is not some sort of a free standing building but a structure attached to and an integral part of the Boys Market building. They have a common wall—the west wall of the building constitutes the east wall of the loading dock—and the north wall of the loading dock is attached to the retail store building; both walls are of concrete block construction and are the foundation of the building. The loading dock area is a functional part of the Boys Market particularly its warehouse and receiving operation. In *People* v. *Franco* (1926) 79 Cal.App. 682 [250 P. 698], the court held that taking shoes from a showcase fastened along the walls and sides of a staircase leading to the sidewalk constituted burglary because it was attached to the store and covered by the roof of the building. Similarly, in *People* v. *Jackson*, 131 Cal.App. 605 [21 P.2d 968], the showcase was cemented to the floor of a clothing store entrance and sheltered by the roof and side walls of the building; the court held that it "became a part of the store or the building by being so placed, and the store constituted the whole of such building." (P. 607.) In *In re Christopher J.*, 102 Cal.App.3d 76 [162 Cal.Rptr. 147], the minor was charged with entering a dwelling house; he entered a carport stealing a battery and lantern. Inasmuch as the minor did not raise in the court below the issue of whether a carport is a building within the meaning of the statute, this court affirmed the judgment by deciding that the carport was a part of the dwelling house. The carport was 18 by 18 feet, walled on one side and roofed, enclosed in the rear with a half wall and open on 2 sides; the carport was attached to and an integral part of the house. Relying on *People* v. *Franco*, 79 Cal.App. 682, 684 [250 P. 698], the court concluded "that with respect to a carport appurtenant to the dwelling house, the requirement of a structure with four walls is satisfied by the dwelling house itself and it is unnecessary to find, as minor contends, that the carport alone satisfies the definition of a separate 'building.'" (P. 80.) The loading dock is

an integral part of the structure housing the retail store which is a building within the contemplation of the statute. (*People* v. *Corral*, 60 Cal.App.2d 66, 70 [140 P.2d 172].) "[U]nder section 459 a person who enters a store with the intent of committing theft is guilty of burglary." (*People* v. *Ceballos*, 12 Cal.3d 470, 479, fn. 2 [116 Cal.Rptr. 233, 526 P.2d 241].)

The judgment is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 15, 1982.