Filed 7/15/14  P. v. Crick CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM EVANS CRICK, JR.,<br><br>        Defendant and Appellant. | B246675<br><br>(Los Angeles County<br>Super. Ct. No. KA099828)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:*

It is ordered that the opinion filed herein on June 17, 2014, be modified as follows:

On page 9, the second sentence in footnote 4, beginning "Aside from the fact that he offered no record citations" is deleted and the following sentence is inserted in its place:

> We find this characterization not compelling, particularly given the fact that the mobile home was also referred to as a house.

There is no change in the judgment.

Appellant's Petition for Rehearing is denied.

_____

\*        BOREN, P. J., ASHMANN-GERST, J., FERNS, J.†

†        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM EVANS CRICK, JR.,<br><br>        Defendant and Appellant. | B246675<br><br>(Los Angeles County<br>Super. Ct. No. KA099828) |

APPEAL from a judgment of the Superior Court of Los Angeles County. David C. Brougham, Judge.  Affirmed.

John J. Uribe, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information filed by the Los Angeles County District Attorney, defendant and appellant William Evans Crick, Jr., was charged with arson of an inhabited structure or property (Pen. Code, § 451, subd. (b)).[1]  Appellant pleaded not guilty.  Following trial, the jury found appellant not guilty of violating section 451, subdivision (b), but found him guilty of the lesser included offense of violating section 452, subdivision (b).[2]

Appellant was sentenced to a term of four years, with presentence custody credits of 312 days.  He was ordered to pay various fines, fees, costs, charges, and/or assessments totaling $570.

Appellant timely filed a notice of appeal.  On appeal, he argues that (1) the evidence is insufficient to support the jury's finding; and (2) the trial court erred in refusing to instruct the jury that if the mobile home was appellant's personal property, then it must acquit him.

We affirm.

## FACTUAL BACKGROUND

I. *Prosecution Evidence*

A.  The Fire

Beginning in 2003, appellant rented space at Covina Hills Mobile Home Park in La Puente to park his mobile home.  On August 22, 2012, appellant's mobile home caught fire.  Within minutes, firefighters arrived on the scene and eventually put the fire out.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Section 452, subdivision (b), provides that in relevant part, that a defendant is subject to a particular jail or prison sentence if he "[u]nlawfully causes an inhabited structure or inhabited property to burn."

2

B. <u>Deputy Piggue's Testimony</u>

In addition to firefighters, Deputy Sheriff Romel Piggue of the Los Angeles County Sheriff's Department responded to the scene.

Appellant was at the scene and appeared upset and agitated. Detective Piggue did not see any burns on appellant's body, and he did not see firefighters provide appellant with medical aid, however, he did notice black soot on appellant's face and chest-shoulder area.

Later, Deputy Piggue learned from appellant that the fire had started in the kitchen as a result of appellant leaving food on the stove unattended as he went to get his dog that had gotten loose. Based on information that he received from the fire department and from his interview of appellant, as well as based upon his own observations, he concluded at that time that the fire was accidental in nature. Nonetheless, because the fire had caused property damage, he reported the incident to the Los Angeles County Sheriff's Department's Arson Explosion Unit for any follow-up investigation.

C. <u>Mobile Home Park Administrator's Testimony</u>

Linda Heape (Heape), the resident community manager at Covina Hills Mobile Home Park, arrived at the scene after Deputy Piggue.

Heape testified about what she knew of the mobile home park's relationship with appellant. Appellant and the cosigner of the rental agreement, Marysol Gray (Gray), "got behind on their rent in November 2010." They signed "[a] stipulation forbearance agreement for payback of monies owed." Appellant and Gray owed about $1,150. To offset that amount, they agreed to pay about $50 a month, from January 2011 through November 2012, in addition to their standard monthly rent.

In October and December 2011, the administrators of the mobile home park sent notices to appellant and Gray that they had failed to make complete payments. Appellant and Gray did not make any payments after March 2012. In May 2012, the administrators

gave appellant and Gray a notice "to pay or quit" in three days,[3] including a notice that their rental agreement would be terminated in 60 days if they did not pay or quit. That document indicated that appellant and Gray owed about $2,900.

After the administrators served appellant with that notice, he spoke to the office staff about it; but, he "never presented a solid plan to [them]." An attorney then served appellant with an unlawful detainer complaint to evict him.

Before the fire occurred on August 22, 2012, no one had served appellant with a lien for the mobile home. Appellant was entitled to sell his mobile home. Eight days after the fire, the Los Angeles County Sheriff's Department "delivered" to the mobile home park "possession" of the space that appellant had been renting.

Heape agreed that when a person rents space at the mobile home park, that person is free to move his or her mobile home and leave the park.

Heape believed that if a renter stayed for 60 days after receiving proper notice, and then lost an unlawful detainer suit, "at that point [he would] have to leave the mobile home there and [he would] have to leave the premises." Heape agreed that "until [a] judge signs . . . [the] judgment[,] the mobile home park cannot take [the] mobile home." On the date of the fire in this case, the mobile home park did not have any ownership interest in the mobile home where appellant lived.

If a renter at the mobile home park decides to sell his mobile home, the renter "need[s] to notify the park" and fill out "a notice of intent to sell form." If the renter has a realtor, the renter has to state that on the form. As far as Heape was aware, no one ever filed an intent to sell form on appellant's behalf. When asked whether a real estate agent notified her in July 2012 that the agent wanted to sell appellant's mobile home, Heape replied, "I was not specifically informed. I don't know—there was no formal notice of that. If she came into the office, she may have." Asked again about this, and when told by the attorney that the agent was Judy White (White), Heape responded, "I don't recall

---

[3] The three-day notice was for nonpayment of rent and other charges, such as the pass through charges for gas and electricity.

4

her speaking specifically to me. It sounds vaguely familiar that she may have come in and commented."

Heape added that her recollection on that point was "very vague" and that she "could be remembering another situation but it could be that one." Heape did not remember whether White had asked for an intent to sell form. Heape knew that White "had some . . . in her stock because she sells in that park."

On "April 20, 2012, there was some concern that something might happen to the [mobile home]." In the middle of August, the management company "took precautionary steps [¶] . . . [¶] . . . to keep careful watch on the [mobile] home." Heape stated, "[W]e informed our corporate office of some hearsay from one of the residents [who] described the situation." And, one of the staff members had "some concern [about appellant's] behavior or appearance or something like that [when] he came to the office a couple [of] times while [Heape] was out." The staff member sent an e-mail to Heape and the corporate office.

A staff member phoned Adult Protective Services. Heape agreed that the administrators arranged for "more frequent patrols" of the space that appellant rented, and one of the staff members tried to file a sheriff's report. The sheriff's department would not accept the report because the mobile home was not the property of the administrators.

D. Appellant's Neighbor's Testimony

Liliana Padilla (Padilla) rented the space next to appellant's at the mobile home park. During the two years before the fire, Padilla had only limited conversations with appellant. They spoke with each other in Spanish. "When [appellant] was stable then [her relationship with appellant] was okay. But when . . . he wasn't doing well, he would just get angry [and] upset about everything."

Before the fire, Padilla spoke to appellant about two or three times in 2012 about his mobile home. Appellant told her "[t]hat the park was not going to keep the house [and] he would do something to the house with his own hands." He added "[t]hat he was going to . . . burn it down." He was angry and slammed the door "real bad." On one

occasion, appellant stated "that he was having problems with the park. They [wanted] to throw him out." Padilla reported to the administrators about two or three times that appellant had made these remarks.

Appellant did not have any water in his home because the water company had shut it off. He borrowed water from Padilla.

Days before the fire, appellant had been cleaning his property and packing items in his car. He put a "for sale" sign up for about 15 days. Padilla and appellant talked with one another about the sale of his home. She was not interested in it and did not state that she wanted to buy it. However, Padilla had a friend, who offered to buy appellant's mobile home for $6,000.

On the date of the fire, Padilla had planned to drive her children to school. But, her car "wouldn't start so [appellant] came out dancing and he helped [her] to move it, to push it." Appellant was dancing "[w]ith a broom. He had a broom and he started dancing [with it]." He appeared to be "[h]appy."

Shortly after the fire, Padilla came home. Appellant was walking with a dog. His clothes were black from the smoke. "He was very nervous."

E. Arson Explosives Detail

Detective Michael Cofield was assigned to the Arson Explosives Detail. He investigated the fire in this case. When he went to the scene, he saw appellant "with a broom and he was sweeping up fire debris into a pile in front of the trailer."

Detective Cofield concluded that the fire had started on the living room floor of the mobile home. He "was able to eliminate [the possibility that the fire was caused by] accidental sources." He could not "eliminate" the possibility that someone "intentionally set" the fire.

Appellant gave Detective Cofield two different explanations about how the fire started. Detective then asked appellant to show him the inside of the trailer, and appellant did so. Detective Cofield testified that when they went into the "living room area," appellant "became pretty agitated. He was . . . talking to somebody, not me, and making some comments about how they did this to him." Detective Cofield took

6

appellant outside and arrested him. He initially arrested appellant for recklessly causing a fire, but not arson. Later, he changed his opinion about the crime appellant committed.

Detective Cofield explained at trial that "none of [appellant's] stories made any sense." He believed that someone intentionally set the fire, and "the point of origin [was] in the center of the living room floor."

## II. *Defense Evidence*

### A. Real Estate Agent's Testimony

White testified that she lived in a mobile home. She sold appellant his mobile home in 2003. About six weeks before the fire, appellant told her that he was "in trouble," "need[ed] help," and wanted to sell his mobile home. She told him that she thought she could easily sell it for about $20,000.

White advised appellant "to clear up the clutter around the house, take trash out [and] wash the house down." He told White that after he sold the mobile home, he would pay off his debts to the mobile home park managers. She helped appellant fill out the "intent to sell" form and visited Heape. White wanted to find out how much appellant owed the management company. White did not give Heape the intent to sell form, but she told Heape that she had the form. Heape replied that White was "not able to do that and that [appellant was] in legal [proceedings] and for [White] to stay out of it."

White then encouraged appellant to speak with attorneys about the issue, and she gave him all the information to "save his home, hopefully." Appellant later told White that the attorneys "refused to deal with him, period." White did not do anything further to sell appellant's mobile home, but she tried to help appellant because "they cut off all his utilities." She gave him water.

B.  Appellant's Testimony

Appellant testified that in 2012, he fell behind in his rental payments to the mobile home park.  He tried to make arrangements with the management company.  He "finally contacted a couple of places and they were willing to work with [him]" to loan him money.  He also found out that he was getting an additional inheritance of $2,500 from his father's estate.

Appellant told Heape that he had a plan to send the funds directly to the management office.  But, she would not accept the arrangements that he had made.

After appellant received the eviction notice, he planned to sell his home in order "[t]o pay the park" and "resolve the problems."  White had agreed to sell his mobile home for $20,000.  In fact, when appellant told White about Padilla's friend's offer to purchase the mobile home for $6,000, White told him that they were "lowballing" him and that his home was "worth much more than that."

According to appellant, Padilla was upset that appellant wanted more than $6,000 for his mobile home.

Appellant intended to pay the management company after he sold the mobile home.

Appellant believed that the fire started after he moved some burning cards, which he had used to light the eye of the stove, to a trash can.  He stated that he did not set the fire intentionally or to ward off evil spirits.  He had nothing to gain by burning his home.  He did not have fire insurance.  He denied telling Padilla that he was going to burn down his mobile home.

Because he had not slept well after the fire, a friend gave appellant some hallucinogenic mushrooms.  This was the first time that he had ever ingested hallucinogenic mushrooms.  When appellant spoke to Detective Cofield, he was still feeling "[v]ery distraught" and the effects of the mushrooms.

8

## DISCUSSION

A. <u>Sufficiency of the Evidence</u>

Section 452 provides: "A person is guilty of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned any structure, forest land, or property." Subdivision (b) of that statute provides, in relevant part, that a defendant is subject to a particular jail or prison sentence if he "[u]nlawfully causes an inhabited structure or inhabited property to burn." (§ 452, subd. (b).)

In order to determine whether appellant was guilty of violating section 452, the jury was instructed as follows: "To prove that the defendant is guilty of the lesser included crime of Unlawfully Causing Fire to an Inhabited Structure, the People must prove that: [¶] 1. The defendant set fire to or burned property or an inhabited structure; [¶] 2. The defendant did so recklessly; [¶] AND [¶] 3. The fire burned an inhabited structure." The trial court defined "structure" as a building.

Appellant asserts that the People did not prove that a mobile home was a structure and, therefore, there was insufficient evidence to support his conviction for the lesser included offense, violation of section 452, subdivision (b). In response, the People argue that under the plain meaning of section 452, so long as the prosecutor proved that appellant burned "'inhabited property,'" the conviction can stand. In light of the instruction given by the trial court, we cannot agree with the People's position on appeal. We must determine whether appellant's mobile home was a structure.

We conclude that the mobile home was a structure for purposes of section 452, subdivision (b). (*People v. Labaer* (2001) 88 Cal.App.4th 289, 292.) Appellant purchased his "house" through a real estate agent.[4] It had been appellant's residence

---

[4] During oral argument, appellant's counsel repeatedly stated that the mobile home was referred to as a "trailer." Aside from the fact that he offered no record citations, we find this characterization not compelling, particularly given the fact that the mobile home was also referred to as a house.

9

since 2003. (*Ibid.*) While it arguably could have been moved,[5] it had been fixed to a particular location since 2003—it was parked in space 134. (*Ibid.*) It had four walls and a roof. (*Id.* at p. 294.) It had a kitchen, living room, hallway, and at least one bedroom. (*Ibid.*) Appellant's monthly rental payment included pass through charges for gas and electricity. And, the mobile home had home furnishings that burned during the fire.

Appellant's reliance upon *People v. Muszynski* (2002) 100 Cal.App.4th 672 is misplaced. In that case, the Court of Appeal determined that an apartment in a complex is not a building, and therefore not a structure, for purposes of arson (§ 451.5, subd. (a)(3)) because a "*building* usually describes a covered structure that stands predominately by itself and appears more separate and distinct from any other structure than connected to and a part of another structure." (*Id.* at pp. 678–679.) Here, as set forth above, appellant's mobile home was a separate covered structure, distinct from the other mobile homes in the mobile home park. (*Id.* at pp. 679–680 ["None of the individual apartments in defendant's complex projects an identity that is more separate and distinct from the complex than connected to it. Indeed, photographs indicate that the apartments were not separately constructed and later joined together. Rather, the entire complex appears to have been built as a single entity, comprising multiple units. Each unit constitutes an integral part of the whole complex. None could be removed without compromising the integrity of the complex because the fundamental elements of each unit—walls, ceilings, floors—are structurally inseparable from the whole. Moreover, none of the units has an external shape or identity that is independent of the shape and identity of the entire complex"].) (*Ibid.*)

In his reply brief, appellant relies heavily upon *People v. Goolsby* (2014) 222 Cal.App.4th 1323, in which the Court of Appeal reversed the defendant's arson conviction (§ 451, subd. (b)) for setting fire to a motor home. (*Goolsby*, *supra*, at pp. 1325–1326, 1328.) On April 23, 2014, the Supreme Court granted review of

---

[5] During oral argument, without a citation to the record, appellant's counsel asserted that the mobile home had wheels.

*Goolsby*.  (*People v. Goolsby*, 2014 Cal. Lexis 2992 (Apr. 23, 2014, S216648).)  Thus, we do not consider it.

       B.  <u>Jury Instructions</u>

       Appellant claims that the trial court violated his rights when it failed to instruct the jury that if the mobile home was appellant's personal property, then the jury must acquit him.  In so arguing, appellant directs us to section 452, subdivision (d).  Appellant misconstrues the applicable subdivisions of section 452.

       As set forth above, section 452 provides:  "A person is guilty of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned, any structure, forest land or property."  Subdivision (b) then provides that "[u]nlawfully causing a fire that causes an inhabited structure or inhabited property to burn is a felony." (§ 452, subd. (b).)  Subdivision (d) follows with "[u]nlawfully causing a fire of property is a misdemeanor.  For purposes of this paragraph, unlawfully causing a fire of property does not include one burning or causing to be burned his own personal property."  (§ 452, subd. (d).)

       Appellant was convicted of violating subdivision (b) of section 452.  The exception in subdivision (d) does not apply to subdivision (b).  (See, e.g., *People v. Glover* (1991) 233 Cal.App.3d 1476, 1484.)

       To the extent appellant is arguing that the trial court should have given the jury another lesser included offense instruction regarding a violation of section 452, subdivision (d), he is mistaken.  A trial court should not give a lesser included offense instruction unless there is substantial evidence that the defendant is guilty of the lesser offense and not guilty of the charged offense.  (*People v. Redd* (2010) 48 Cal.4th 691, 732.)  Given the facts presented here, appellant could not have violated the lesser offense in subdivision (d) without violating the greater offense in subdivision (b) because the mobile home was an inhabited structure or property.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
BOREN


_____, J. *
FERNS

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.